BEADLE v. SAGE LAND & IMPROVEMENT CO.

1. CONTRACTS—INTERPRETATION—GRAMMATICAL CONSTRUCTION.
   In the interpretation of contracts a nice grammatical construction is not always to be regarded.

2. BROKERS—REAL ESTATE—EMPLOYMENT—DURATION.
   Correspondence creating an agency to sell two tracts of land, examined, and *held*, to create an agency for the period of 60 days only for both tracts, the broker having "the privilege of looking the land for 60 days."

Error to Chippewa; Steere, J. Submitted April 11, 1905. (Docket No. 53.) Decided May 12, 1905.

Assumpsit by Charles S. Beadle against the Sage Land & Improvement Company for commissions on the sale of certain real estate. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Warner & Sullivan*, for appellant.

*De Vere Hall* (*Sharpe & Handy*, of counsel), for appellee.

CARPENTER, J. In November, 1902, defendant sold a large tract of land situated in Chippewa county, in this State, to the Northwestern Timber Land Company. Plaintiff, under the claim that he was entitled to a commission for making said sale, brought this suit. This suit was tried before a jury, and a verdict directed in defendant's favor. Plaintiff asks us to reverse the judgment entered on said verdict. He insists that the evidence shows or warrants the inference that he was the procuring cause of the sale, and that, by virtue of a contract between him and defendant, he was entitled to a commission therefor. The contract between plaintiff and defendant was made

by correspondence, which was opened by a letter from plaintiff to defendant dated February 6, 1901, and closed by a letter from defendant to plaintiff dated March 30, 1901. This correspondence consists of eight letters, four of which were written by plaintiff, and four by defendant. We may summarize the first six of those letters by saying that plaintiff notified defendant of his desire, by "negotiations which would be of short duration," to act as its agent to effect a sale of a large quantity of its lands to a particular customer, not designated, and that plaintiff and defendant agreed upon a commission to be paid plaintiff in case such sale was effected. In other respects said first six letters were merely preliminary to the arrangement made by the seventh and eighth of said letters. The seventh letter reads as follows:

"SAULT STE. MARIE, MICHIGAN, March 25, 1901.
"SAGE LAND & IMPROVEMENT COMPANY,
                "Ithaca, New York.
"Gentlemen: I have a customer for a small tract of your land, have not seen my large customer [this was the customer before referred to] since receiving your last letter, but for the benefit of the small one I request prices by townships of the following: [Then follows an enumeration of certain townships.] When I get your prices on these tracts he will look them at once with a view of buying them, with this customer I wish you to name your best terms; for the benefit of the larger customer I wish you to send your best price on [other specified townships]. Prices to be based upon the red ink areas shown by the map sent you to me, this matter to be cash price with the privilege of looking the lands for 60 days.
                "Yours truly,
                "C. S. BEADLE."

Letter No. 8 reads as follows:

                "ALBANY, NEW YORK, March 30, 1901.
"C. S. BEADLE,
        "Times Block, Sault Ste. Marie, Michigan.
"Dear Sir: Yours of the 25th at hand. Our prices on land you ask as per map sent you are as follows: [Then follow both the prices on the larger group and the

smaller group, as requested by plaintiff.] We will give you an option for 60 days, or until June 2, 1901, on the first lot of land quoted in this letter with the understanding that this price is cash at the expiration of option, and that in case your parties should find that they were not interested in the land at prices named, they would give up the option as soon as they felt sure that they would not want the land. As for the smaller lot, No. 2, we would be willing to take one-third cash down; balance in three payments six months apart at six per cent. No timber to be cut until paid for in addition to down payment.

" Yours truly,
"THE SAGE LAND & IMPROVEMENT COMPANY."

Until after the sale, in November, 1902 (nearly 18 months later), no further correspondence took place between the parties in relation to this agreement. It is the claim of plaintiff that both before and after June 2, 1901, he talked with the parties who subsequently organized the Northwestern Timber Land Company, and that in consequence of such talk they made the purchase before mentioned. It is conceded by plaintiff that defendant made the sale in question in good faith, not knowing that plaintiff had ever done anything whatever to promote the same.

Plaintiff does not claim to recover merely because his efforts contributed to the sale. He bases his right to recover on the ground that his agency to effect the sale continued until the sale was actually made in November, 1902. His brief warrants our saying that he concedes (and this concession accords with the law as stated in *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 388) that he has no right to a commission if his agency expired June 2, 1901. Did it so expire? This depends upon the proper construction of the letters of March 25 and March 30, 1901, heretofore quoted. Plaintiff, while conceding that the exclusive right of his customer for the larger group of land expired June 2, 1901, insists that he himself had a right, not exclusive, to sell the same at a later day; and he also insists that his agency to sell the smaller group of land was unlimited in duration.

The concession that the exclusiveness of plaintiff's customer's right to purchase terminated June 2, 1901, is fatal to plaintiff's contention that he himself had thereafter any right to sell the larger parcel. The only right he ever asked was the right to sell that parcel to a particular customer, with the privilege of looking the lands for 60 days. That right he got, and we can find nothing to indicate that he got more than that. It was not intended by this correspondence that plaintiff's customer should get an exclusive right to purchase for a period limited in duration, and that he himself should continue to be plaintiff's agent to effect a sale for a period unlimited in duration.

Was plaintiff's agency to sell the smaller tract unlimited in duration? To answer this question, we must construe defendant's letter of March 30th in connection with plaintiff's letter of March 25th. Plaintiff brings this suit upon the assumption that by the latter letter defendant accepted the proposition which was made in the former. If, therefore, plaintiff asked in his letter of March 25th for a limited time to sell this smaller parcel, we are bound to say that such time was limited by the acceptance of his proposition. Do the words in plaintiff's letter of March 25th, "with the privilege of looking the lands for 60 days," apply to the smaller parcel as well as to the larger? Plaintiff's contention that they do not rests entirely upon the fact that they are found in a sentence which relates solely to the larger parcel. While courts, in construing writings, give due force to the grammatical arrangement of clauses, nothing is better settled than that they will disregard that construction if it is at variance with the intent of the parties as indicated in the whole writing.

"The grammatical construction of a contract will not be followed if a different construction will give effect to the intention of the parties as shown by the whole instrument, and accomplish the object for which the contract was executed." 9 Cyc. p. 585.

In *Gray* v. *Clark*, 11 Vt. 583, land was described in a mortgage as follows:

"All that part of lot number three in the fifth range of lots in said town, meaning to convey all that part of said lot that Luther Hunt deeded to me this day, excepting seventeen acres lying in the southeast corner of said lot, also including one-quarter of an acre which James English deeded to Daniel Wilson."

The question in controversy was this: Did the mortgage cover the quarter of an acre last described? The court held that it did. The opinion was written by Justice Redfield, and the reasoning is as follows:

" If we adopt the rule, ' Ut res magis valeat quam pereat,' we must consider this as forming a part of the exception, for, as the whole estate had already been described, it would not enlarge nor in any way render more certain the grant, but would enlarge the exception. But this maxim in regard to the construction of deeds is but one among the very great number which the sages of the law have left us. The great object, and, indeed, the only foundation, of all rules of construction of contracts, is to come at the intention of the parties. And any rule which leads us aside of this grand object is to be disregarded. In the present case, from the general nature and object of the transaction and the common course of business, there can be little doubt of the intention of the parties to include the buildings [these buildings were on the land in controversy], which constituted the principal value of the purchase, in the mortgage which was executed to secure the purchase money. * * * We ought not, therefore, to adopt a construction which will defeat the obvious intention of the parties, and produce a result which it is highly improbable, perhaps absurd, to suppose they contemplated. This view is in accordance with established rules of construction. *Cholmondeley* v. *Clinton,* 2 Barn. & Ald. Rep. 625; *Hassell* v. *Long,* 2 M. & S. 363. It has been repeatedly said that, in the interpretation of contracts, a nice grammatical construction is not always to be regarded. *Cromwell* v. *Grunsden,* 1 Ld. Raym. 335, Salk. 462; *Fountain* v. *Gauvers,* 2 Show. 333; 7 Petersd. Abr. 139. Hence we are under no necessity of referring the word 'including' to the next immediate antecedent, 'excepting.' The term 'including' may have reference to the deed as well as the exception. And it is evident the most natural and obvious import of the words is 'including' in the deed, and not in the exception."

See, also, *Newton* v. *McKay*, 29 Mich. 1. We may therefore place upon this clause, notwithstanding its grammatical position, a construction in harmony with the purpose shown by the entire letter. The obvious purpose of the letter was to secure to plaintiff the right of earning a commission by effecting a sale of the smaller parcel (as well as of the larger) to a particular customer. It was just as essential to the accomplishment of the purpose to sell to the smaller as to the larger customer that plaintiff (or his customer) should have the right of inspecting the land, and a definite time during which his right to earn a commission should not be destroyed by any act of defendant. The letter should, if it can be, so construed as to secure this right. There is no difficulty in so construing it. We so construe it when we declare that the words "with the privilege of looking the lands for 60 days" were intended to and do apply to all the lands referred to in the letter. Had defendant within said 60 days deprived said plaintiff of his right to effect a sale, we think that it would have been easy for him to both see and prove that his legal rights were thereby violated. In short, we think the writings, properly construed, gave to plaintiff 60 days, and 60 days only, in which to make a sale of the smaller as well as of the larger parcel of land. Plaintiff had, therefore, no right to a commission upon the sale in question, and the trial court properly directed a verdict in defendant's favor.

Judgment affirmed.

MOORE, C. J., and McALVAY, OSTRANDER, and HOOKER, JJ., concurred.