### BLAKESLEE *v.* PEABODY.

1. BROKERS—CONTRACTS—COMPENSATION—PERFORMANCE.

Where plaintiff, acting as broker for the defendant, secured a buyer for the property who was ready and able to pay the price, and, at the time the transaction should have been concluded, the defendant was in Europe and the buyer, through defendant's agent, obtained possession of the premises, which he occupied for some time, afterwards conveying the property to defendant by quitclaim deed, the plaintiff had performed his commission so as to be entitled to the agreed compensation.

2. SAME—RATIFICATION—VENDOR AND PURCHASER.

Under conflicting testimony, the issue whether defendant ratified the sale by negotiating with the purchaser and obtaining a quitclaim deed of the premises during the absence of defendant from the country, was a question of fact, properly left to the jury.

Error to Ottawa; Cross, J. Submitted January 23, 1914. (Docket No. 85.) Decided June 1, 1914.

Assumpsit by Chauncey M. Blakeslee against Frederick F. Peabody for broker's commissions. Judgment for plaintiff. Defendant brings error. Affirmed.

*Soule & Soule*, for appellant.

*Farr, Kolyn & Farr*, for appellee.

McALVAY, C. J. This suit was brought by plaintiff against defendant in assumpsit to recover a certain commission under an agreement made with defendant to furnish him a purchaser ready, willing, and able to purchase certain premises located in the township of Spring Lake, Ottawa county, Mich., at a price and upon terms fixed by defendant. The result of the trial was a verdict and judgment in favor of plaintiff for the amount claimed. Defendant, upon a writ of error, asks for a reversal.

There is little or no dispute between the parties upon the material facts in the case. The property in question was part of a considerable tract of resort property at that place owned by defendant, who resided in Troy, N. Y. He was acquainted with plaintiff, who was a contractor living at Spring Lake. On May 11, 1912, defendant wrote plaintiff a letter, the material parts of which are as follows:

"If you can find a purchaser for my whole property on Spring Lake * * * for $25,000 * * * I will sell the whole property. * * * I hope you can find a purchaser for me, and if so, I am willing to pay you the usual commission of 2½ per cent."

Plaintiff found a customer for ten acres of it, upon which a bungalow was situated, and wrote defendant to put a price upon it. On June 5, 1912, defendant wrote plaintiff as follows:

"*Dear Sir:*

"The lowest price I have put on the bungalow is $9,000. It includes, as you probably know, ten (10) acres of land. I hope you will succeed in selling it to Mr. Williams."

On June 10, 1912, defendant wrote another letter to plaintiff, as follows:

"I have had some correspondence with Mr. Williams and finally offered him the bungalow for $8,000, $2,000 cash and the balance in three years at six per cent. I think that is a very low price for the property and hope he will take it."

After receiving this letter, plaintiff had further negotiations with Mr. Williams, who agreed to take the property at that price and said he was going to New York and would stop at Troy and complete the purchase with Mr. Peabody. Mr. Williams, on arriving at Troy, went to the office of Mr. Peabody ready, willing, and able to take the property upon the terms fixed. He found that Mr. Peabody had sailed for Europe the day before, and was informed by Mr. Peabody's secretary that she was authorized to complete the transaction. Mr. Williams, who was examined as a witness for plaintiff, was not allowed to testify further as to what occurred in Peabody' office in Troy, because of the objection that no agency had been shown. Within a few days he returned to Spring Lake and took possession of this property and occupied it for several weeks, when, upon payment to him of $750 by an attorney who claimed to represent defendant, he quitclaimed all his right and interest in the premises to defendant. The action of this attorney was confirmed by defendant, as appears by an excerpt from a letter written by him to plaintiff's attorney, as follows:

" * * * My attorney afterwards paid Williams a consideration for the annulment of the contract so as to clear the title but no sale was ever made to Williams in the proper sense of the term."

The record shows that, after Mr. Williams was at Troy, all of the premises which defendant owned at Spring Lake were sold, on June 26, 1912, for $25,000 to a man named Morse through real estate agents in Grand Rapids, in whose hands they had been placed for sale for more than a year. The last letter above quoted was written by defendant after such sale and after his return from Europe, when plaintiff's claim against defendant had been given to his attorneys.

Defendant offered no evidence in the case and made a motion at the close of plaintiff's case for a directed verdict. This was denied, and after argument by counsel the case was submitted to the jury under the charge of the court with the result as stated. There were 27 assignments of error, of which very few require consideration, the most material of which is whether the court should have directed a verdict in favor of defendant.

It is the contention of plaintiff that under his agreement with defendant his duty ended when he had furnished a purchaser ready, willing, and able to complete the purchase upon the terms offered by the vendor. It does not appear to be disputed but that he found such a purchaser in Mr. Williams, who was ready, able, and willing to buy this property from defendant upon the terms fixed by defendant; nor is it denied that Mr. Williams went to Troy, N. Y., for the purpose of completing the purchase. Plaintiff's commission, however, did not depend upon a completed sale. This principle is so well established by the courts of this and other States that citations of authority are unnecessary.

It appears that the principal contention of counsel for defendant is that this consummation of the sale was defeated because there is no evidence in the record that defendant was notified of that fact. Plaintiff contends that the record not only shows defendant was notified that Mr. Williams would purchase this prop-

erty, but that afterwards through his office he recognized and ratified the transaction. The evidence in the case conclusively shows that plaintiff secured this purchaser and notified defendant of that fact; that defendant took the matter up with Mr. Williams, and his letter shows that he gave him the terms and notified plaintiff by the letter what the terms were; that plaintiff then had further negotiations with him, and he agreed to the price and terms; and that Mr. Williams, for the purpose of closing the deal, went to defendant's office in Troy and so informed defendant's secretary, who said she was familiar with defendant's correspondence as she had written the letters; that Mr. Williams returned to Spring Lake, where he and his wife were let into possession of the premises by defendant's caretaker and plaintiff, who, being present, surrendered the keys of the cottage to Mrs. Williams. It appears to be undisputed that Mr. Williams retained such possession for several weeks. It was a question of fact for the jury to determine whether defendant, through his duly authorized agent, was notified that plaintiff had fulfilled his contract.

The matter of ratification rests upon what was done after that and the surrender of possession of the premises by Mr. Williams. There is no evidence in the case disputing the fact that defendant's attorney negotiated with Mr. Williams and upon payment of $750 to him received a quitclaim deed to the defendant of all his interest in the premises. The authority of this attorney is admitted in the quotation from defendant's letter given above. This, also, was a question of fact for the jury to determine.

There is a claim in the case that the authority to plaintiff to find a purchaser for this property was revoked by the sale to Morse. Upon the facts in the case upon which plaintiff relies for recovery, we do not think it is necessary to consider this proposition.

Error is assigned upon portions of the charge of

the court and certain requests to charge as given, also upon the admission of certain testimony in the case. These have been examined with care, and we find that no reversible error was committed. The charge of the court, taken as a whole, fairly submitted the questions of fact in the case to the jury, and there was evidence to support the verdict.

The judgment of the circuit court is therefore affirmed.

BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred. MOORE, J., did not sit.