## HOLMES REALTY CO. *v*. SILCOX.

1. BROKERS—COMMISSIONS—CONTRACTS—NOTICE OF TERMINATION.
    Where a contract for the sale of a farm gave plaintiff "an option for eight months and thereafter until terminated by 30 days' written notice," such notice terminated the contract, and plaintiff was not entitled to any commission, although the farm was subsequently sold to a person interested by plaintiff during the life of the contract.[1]

2. SAME—CONTRACTS—CANCELLATION.
    Where the contract of sale provided for the right of cancellation, the rule that the owner cannot, with knowledge that the agents are negotiating a sale, cancel the contract and avoid payment of the commission, is not applicable; distinguishing *Heaton* v. *Edwards*, 90 Mich. 500 (51 N. W. 544).

3. EVIDENCE—NOTICE TO PRODUCE—DOCUMENTARY EVIDENCE.
    No notice is necessary to produce documentary evidence, where the paper to be produced is itself a notice.

4. SAME—DOCUMENTARY EVIDENCE—SECONDARY EVIDENCE.
    Where the plaintiff's stenographer and manager testified that they had searched the files for the original letter of cancellation and were unable to find it, and that it had never been received by plaintiff, it was sufficiently accounted for, and no error was committed in allowing defendant to introduce a copy of it and testify that he mailed it to plaintiff on the same day and date that it was written.

Error to Ingham; Collingwood, J. Submitted October 10, 1916. (Docket No. 92.) Decided December 21, 1916.

Assumpsit by the Holmes Realty Company against C. H. Silcox and another for a commission on the sale

---

[1]As to when real estate broker is considered cause of sale within the time limit by contract, see note in 44 L. R. A., at pages 349, 593.

of real estate. Judgment for defendants. Plaintiff brings error. Affirmed.

*Thomas A. Lawler* and *John F. Berry,* for appellant.

*John I. Carpenter* and *Robert S. Ballard,* for appellees.

KUHN, J. In the spring of 1912 the defendants, who are husband and wife, owned a farm near the city of Lansing, Mich., as tenants by the entireties. On April 23d of that year agents of the plaintiff company went to this farm, where the defendants resided, and obtained from Mr. Silcox a written option contract, which he signed, by the terms of which he gave "an option for eight months and thereafter until terminated by thirty days' written notice." There is some dispute as to whether or not Mrs. Silcox signed the contract; plaintiff's agents testifying that she did sign it in their presence, while Mrs. Silcox testified that she refused to do so, and that her husband signed her name thereto without her authority. It is the claim of Mr. Silcox that on November 20, 1912, he mailed a letter signed by himself to the plaintiff company in which he said:

"The contract on sale of our farm between you and C. H. and Lena Silcox is withdrawn on and after December 23, 1912."

During the summer of 1912 a Mrs. Gibbs, who resided at Stanton, Mich., corresponded on behalf of herself and husband with the plaintiff company relative to the purchase of a farm near Lansing. She came to Lansing, and was shown the Silcox farm by Mr. Earl Covert, one of plaintiff's agents. She was pleased with the property, but no definite agreement was arrived at, and she said she would buy the Silcox farm if she sold her place at Stanton. This offer on

the part of Mrs. Gibbs to purchase continued contingent upon the sale of their place at Stanton, which occurred in July, 1913, more than six months after the claimed termination of the contract by the defendants.

On election day in April, 1913, Covert, while still in the employ of the plaintiff company, saw Mr. Silcox and showed him a letter written by Mrs. Gibbs; but Mr. Silcox claimed that he had about given up the idea of selling his farm at that time. Covert severed his connection with the plaintiff company about April 15, 1913, and became associated with another agency, and again resumed negotiations with the Silcoxes, which resulted in a formal contract being executed on July 8, 1913, giving the right to sell the farm to the new agency represented by Covert. After some correspondence with Mrs. Gibbs, it finally resulted in the farm being sold to them in September of that year for the sum of $5,600. This suit is brought to recover a commission provided for in the original option, of date April 23, 1912. The trial resulted in a verdict of no cause of action.

It is the claim of counsel for appellant that error was committed by the trial court in refusing to give certain requests to charge which embodied the law applicable to the case. It is contended that the plaintiff was the procuring cause of the sale, and that it was not necessary for the plaintiff to actually consummate the deal in order that it might be entitled to its commission, and various authorities are cited to support this contention.

The general proposition contended for is undoubtedly sound, but what seems to have been lost sight of by counsel is that in this case a contract was entered into by the express terms of which a definite date was set for the life of the contract between the broker and his principal. The question of whether or not the

contract was terminated by a notice as provided for by its terms is a disputed one on this record; but this question was fairly submitted to the jury, and it must be assumed that they found that a proper notice was given in accordance with the terms of the contract. In order for plaintiff to profit from this contract, it was necessary for it, during the life of the contract, to produce a prospective purchaser able, ready, and willing to buy, and if such a purchaser had been produced by the plaintiff before December 23, 1912, it would undoubtedly have been entitled to the commission provided for in the contract. It clearly appears, however, that no such purchaser was produced within the prescribed time, as it appears without question that the Gibbses were not ready to purchase the farm until they sold their property at Stanton, which did not take place until some months after the expiration of the contract. It is true that as a result of the plaintiff's efforts others may have profited. In the case of *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378 (38 Am. Rep. 441), the court said:

"The broker may devote his time and labor, and expend his money, with ever so much of devotion to the interests of his employer, and yet, if he fails, if without an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses the labor and effort which was staked upon success. And in such event it matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal. In a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest; but all this gives him no claim. It was

part of his risk that failing himself, not successful in fulfilling his obligations, others might be left to some extent to avail themselves of the fruit of his labors."

The case of *Heaton* v. *Edwards,* 90 Mich. 500 (51 N. W. 544), is referred to by appellant's counsel, and the general proposition is there laid down that, when the owner of real estate has placed it in the hands of an agency for sale, he cannot, with knowledge that the agents are negotiating with a proposed purchaser, cancel the authority, effect the sale himself, and avoid the payment of their commission. But in the case now before us the very contract provided for the right of cancellation, and this clearly distinguishes the present situation from the one in the *Heaton Case.* See *Beadle* v. *Improvement Co.,* 140 Mich. 199 (103 N. W. 554, 6 Am. & Eng. Ann. Cas. 53) ; *Horton* v. *Immen,* 145 Mich. 438 (108 N. W. 746 ) ; *Decker* v. *Klingman,* 149 Mich. 96 (112 N. W. 727) ; *Blakeslee* v. *Peabody,* 180 Mich. 408 (147 N. W. 570).

Error is alleged because of the court permitting the introduction of a copy of the letter of cancellation which was offered in evidence. The contract does not provide how the notice of termination shall be given, but Mr. Silcox testified that he mailed the notice to the plaintiff on the same day and date that it was written, and that it was never returned. Counsel claim that the original should first have been accounted for, and a notice given to the plaintiff to produce the original before secondary evidence is admissible; but it seems to be well established that no notice is necessary, where the paper to be produced is itself a notice. See 2 Jones, Commentaries on Evidence, p. 296; 1 Greenleaf on Evidence (16th Ed.), § 563c; 17 Cyc. p. 559. It also appears that the plaintiff's stenographer testified that all mail for the company came into her hands for filing, that she had made an examination of the files of the office and was unable to find the original,

and that she had never received the notice. The plaintiff's manager testified that he also searched the files of the office and was unable to find the original of the notice. Under these circumstances, there was no error in receiving secondary evidence of the contents of the letter.

The disputed questions of fact were submitted to the jury with proper instructions, and, being of the opinion that the appellant's assignments of error are without merit, the judgment is affirmed.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON J., did not sit.