HANLEY *v.* PORTER.

1. CONTRACTS—CONSTRUCTION—TO BE CONSTRUED MOST STRONGLY
AGAINST DRAWER.

A contract of agency drawn by experienced real estate
operators, whereby they were appointed agents by the
owners for the sale of certain city lots, is to be construed,
as regards its imperfections and ambiguities, most strongly
against the agents, who drew it and are responsible there-
for.

2. BROKERS—COMMISSIONS—CONTRACTS—INTEREST.

Where a contract of agency for the sale of city lots gave
the agents four years in which to make the sales and
collect the payments, and provided that in payment for
their services in selling and collecting they should retain
60 per cent. of the amount any lot sold for over and
above a stipulated minimum price, they are not entitled
to any share of interest collected on deferred payments;
no provision therefor being made in the contract.

3. INTEREST—WHEN INDEBTEDNESS DRAWS INTEREST.

No contracted indebtedness draws interest until due un-
less agreed upon.

4. BROKERS—COMMISSIONS NOT COLLECTIBLE ON FORFEITED LOTS.

Under the terms of a contract of agency for the sale of
city lots, where the agents are given the privilege of re-
selling forfeited lots, and the only provision for com-
pensation is 60 per cent. of the amount any lot is sold
for over and above a stipulated price, they to retain
50 per cent. of the payments until their commission is
paid, they are not entitled to retain any of the payments
received on forfeited lots unless the total exceeds the
stipulated price; their compensation being limited by the
contract to 60 per cent. of the amount realized above the
stipulated price.

5. CONTRACTS—PARTIES TREATING CONTRACT AS CONTINUING BOUND
THEREBY TO EXTENT ACCEPTED.

Where a contract by its terms ended on a certain date,

[1]Agency, 2 C. J. § 198 (Anno); Contracts, 13 C. J. § 516;
[2]Brokers, 9 C. J. § 77; [3]Interest, 33 C. J. § 117; [4]Brokers, 9 C. J.
§ 77; [5]Contracts, 13 C. J. § 620 (Anno).

but both parties carried it forward and recognized it as continuing in certain particulars, each is bound to the extent that he so accepted it.

Error to Muskegon; Vanderwerp (John), J.   Submitted October 12, 1926.   (Docket No. 76.)   Decided June 6, 1927.   Rehearing denied October 3, 1927.

Assumpsit by Sharland J. H. Hanley and another against Glenn M. Porter and William A. Wyman, copartners as Porter & Wyman, for money due on an agency contract.   Judgment for defendants.   Plaintiffs bring error.   Reversed.

*Carpenter & Jackson,* for appellants.

*Cross, Foote & Sessions,* for appellees.

STEERE, J.   Plaintiffs are husband and wife.   Early in June, 1920, they owned 61 lots in Earl's addition to Muskegon Heights in the county of Muskegon, Michigan.   Defendants were and are copartners in the real estate business under the firm name of Porter & Wyman.   They solicited plaintiffs for the agency of handling and selling this property.   The latter were willing to sell all but 5 of the lots.   On June 8, 1920, negotiations resulted in the contract under consideration here, which defendants prepared.   By it plaintiffs gave defendants the exclusive right for a period of four years to sell the 56 lots on time and collect the proceeds.   Each lot was listed in the contract at a minimum price to plaintiffs, the total minimum amounting to $25,950.   Defendants' commission was to be 60% of what they could sell the lots for in excess of the listed minimum price.   Shortly after the contract was executed defendants put on a sale campaign of the lots at selling prices fixed by them amounting to at least twice the total minimum as listed in their agency contract·   Their selling price for 53

of the lots was $50,665. The record does not show their selling price for the other three, which do not figure in this controversy. Within two months after taking the agency defendants had negotiated sales of all of said lots on deferred payment contracts. Within the first year purchasers of 27 lots permanently defaulted and their contracts were subsequently forfeited.

Under the terms of their agency, defendants were authorized to sell all but two of the lots on contract with a small cash payment down of 10% or less of their sale prices to purchasers. The balance was to draw interest at 6% per annum payable monthly, as the deferred payments fell due. Defendants did the conveyancing. Plaintiffs signed the contracts for sales of lots as prepared by defendants and presented for their signatures.

The questions raised and argued by appellants under their assignments of error are whether, under proper construction of the contract between these parties, defendants are entitled to retain a portion of the interest collected by them on contracts not paid to plaintiffs; and whether they are entitled to retain any portion of the money collected by them on forfeited contracts upon which the minimum price was never paid. The portions of the contract involving those propositions are:

"It is further agreed by the parties hereto, that all payments made as a condition of purchase and as monthly instalments and interest on contracts for the purchase of any lot or lots sold under this agreement shall be paid to Porter & Wyman at their office in city of Muskegon, Michigan, and the proceeds from payments so made, shall be divided and paid by said Porter & Wyman, to the first and second parties hereto as hereinafter specified.

"Said first parties hereby agree, that said second parties may sell the within described lots at any price they may choose, provided, that no lot shall be sold

for a less price than listed herein.    Further said first parties agree to pay said second parties, and said second parties agree to receive and accept as full commission and compensation for their services, a sum equal to sixty (60%) per cent. of amount any lot may be sold for over and above the price such lot is listed at herein, and the remaining forty (40%) per cent. of the amount over and above the listed price, shall be added to the listed price and paid to said first parties according to the terms herein stated.    And said first parties hereby authorize and instruct said Porter and Wyman to retain fifty (50%) per cent of all payments received by them from the sale of each lot, until such time as they, the said second parties, shall have received their full commission of sixty (60%) per cent. as stated above for each lot sold, and it is mutually understood and agreed between the parties hereto, that in case any lot is forfeited by a purchaser failing to pay or comply with the terms of contract under which said lot or lots are sold, the said second parties shall have the right to resell such lot or lots in the same manner as if the same had not been previously sold and under the same terms and conditions as stated herein for the sale thereof.    *    *    *

"Said second parties hereby agree, that they shall on or before the tenth day of each month, remit to said first parties the amount their due from collections received the previous month from lot purchasers, and accompany said remittance with an itemized monthly statement of the amounts paid by purchaser of said lots, giving date and name of each party paying, number of lot and block paid on, and amount paid on each lot."

Defendants were experienced real estate operators. They solicited this contract, prepared and presented it to plaintiffs, and the latter signed it.    No fraud is charged in connection with it.    With the advisability of either party entering into it the court is not concerned.    Both parties are bound by its provisions. Its imperfections and ambiguities are to be construed most strongly against defendants who drafted the instruments and are responsible for them.    By it the

price and terms of sale were left to them, except the minimum limit on price, down payment, and interest on balance due. They were made collectors, and all payments were to be made to them during the four years they were handling the property. They apparently intended to, and did, facilitate their sale campaign by making down and deferred payments by purchasers so temptingly small and protracted as to extend the time of full payment on many lots beyond the time limit of their agency, but omitted to provide for that situation in the contract under consideration. Some 10 of them were yet in force and not fully paid at the time of this trial. For their pay in handling and selling these lots they were "to receive and accept as full commission and compensation for their services, a sum equal to sixty (60%) per cent. of amount any lot may be sold for over and above the price such lot is listed at herein," or minimum specified in the contract. They were authorized to retain at all times during the four years 50% of all payments they received from the sale of each lot, until they had received their full commission of 60% as stated.

That 60% covered not only a so-called "commission," for selling, but "compensation for services" they were required to render in handling the contract sales. Interest was no part of the sales price. Sixty per cent. of the amount they sold any lot for above its listed minimum price is specified as the full payment they agree to receive and accept, protected by their keeping for that purpose and to that extent half of all payments received, and having the use of it while held. We find no language in the contract containing any suggestion that plaintiffs should allow or pay any interest to defendants. Defendants' commission and compensation for services to follow were not earned and due immediately upon making long-time

contract sales of the lots.    They had duties to perform in that connection which might extend over the remainder of the four years, if not beyond.    No contracted indebtedness draws interest until due unless agreed upon.    Defendants drew this contract.    They easily could and should have made it plain if there was any such intent or understanding between the parties.    We cannot construe this contract as entitling defendants to the interest in issue here.

The trial court construed the contract as giving defendants one-half of all money received by them on forfeited contracts, even though the minimum price on none of them had been realized by the owners, saying:

"Under the wording of the contract the defendants have the right to retain the 50 per cent. of the payments that were received and retained by them upon the so-called forfeited contracts.    It is true that the time when defendants shall have received their full commission on these forfeited lots has not arrived and will never arrive, and the plain provisions of the contract are that until that occurs they are entitled to that percentage of the payments."

It is to be noted that all this property belonged to plaintiffs and was sold to third parties under contracts signed and given by them.    All payments made on those contracts were theirs.    Defendants under their contract of agency were entitled to negotiate sales for them, receive payments and retain in their hands one-half of the collections made, to secure their agency fees, which, when earned, "said first parties agree to pay."    Their only investment in the property was their services, and perhaps some incidental expenses.    Their only interest was their compensation for selling, handling, and collecting payments as plaintiffs' agents.    Having found that under their agency contract the time when they "shall have received their full commission on these forfeited lots has not ar-

rived and never will arrive," the court held that under the method provided for securing and paying their full commission, they were entitled to retain 50% of whatever collections they had made on those forfeited contracts, although the time has not arrived and will never arrive when plaintiffs will receive the minimum price on those lots fixed in the contract, beyond which defendants' percentage commission begins.

The probability of forfeitures and resales in a sale promotion of this kind, where sales contracts were made on long time with small payments down, was evidently known to defendants, who, instead of otherwise providing for such contingencies, were content to dispose of the matter by reserving the right to resell the lots on which contracts were forfeited on the same terms and conditions as provided for their initial sale, which put into their hands during the term of their agency control of forfeitures and resales. But one resale is shown during the four years of their agency in handling the property, although the record discloses that over two-thirds of the 27 defaulted and forfeited contracts involved here were at default and subject to forfeiture within the first year. So far as shown, defendants made no attempt to enforce collection of these, and their only activities in handling the property after the lots were first all contracted for sale consisted, excepting one resale, of receiving payments on contracts yet in force, keeping account of the same and making monthly reports to plaintiffs, with such payments as they construed the contract to require.

To construe their commission as fully earned when they negotiated sales of the lots on long-time contracts with small down payments, and due when they had only collected before default twice the full commission on their selling price, is not within the spirit or letter of their contract of agency. Their

duties did not end there.   By strict construction these land contracts (Gleason form) were not a sale of the land described in them, but an agreement of the owner "to sell" on the contracting purchaser complying with imposed conditions.   The full commission which they agreed to receive and accept was 60% of amount any lot was "sold for over and above the listed price." While undoubtedly these parties had no thought of such technical distinctions, defendants adopted a form of contract containing them, and the parties did by the provisions running through their agency contract recognize the practical difference between an actual closed sale and a contract to sell with its uncertain, protracted conditions before consummation.   Taking this contract in its entirety as drawn by defendants, giving them full authority to collect and resell in case of default during the entire period of their agency, we are of opinion it limited their commission and compensation for services to 60% of the amount realized on those contracts above the listed minimum.

Promptly after this contract of agency was executed, defendants negotiated sales with deferred payments extending much beyond the agency limit and plaintiffs ratified them by signing the contracts of sale as prepared and presented to them by defendants.   When the agency limit had elapsed with these outstanding contracts unpaid and many of them long in default, Hanley obtained the defaulted contracts from defendants and employed counsel to enforce them so far as possible, but left the live contracts not yet fully paid in defendants' hands to continue collections as before.   Certain of the defaulted contracts he took over proved collectible, and, without going into details, he with aid of his counsel was able to collect by suit and otherwise $8,500 in cash and securities.   On what they collected they gave to defendants a credit of $1,406.58, claimed to be the amount of commissions

they were entitled to had they collected the amount due on those contracts.

By its terms this contract ended June 8, 1924, leaving an aftermath not contemplated or clearly covered by any provisions in their contract. Both have carried it forward and recognized it as continuing in certain particulars. To the extent each side has accepted, said or done anything to that effect, it is bound.

The judgment is reversed, with costs to plaintiffs, and retrial granted.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.