MURPHY REAL ESTATE CORPORATION v BARRON

1. Brokers—Commissions—Contracts—Listing Agreements—Interpretation of Contract.

A clause in a real estate company's listing agreement which states that the broker must produce a purchaser "ready, willing and able" to purchase before it was entitled to a commission is interpreted to mean that the purchaser must be ready, willing and able to purchase the property within the time limitations provided in the listing agreement.

2. Brokers—Contracts—Listing Agreements—Ambiguity—Construction.

Any imperfections or ambiguities in a real estate listing agreement on a form drawn up by a broker must be construed most strongly against the broker.

3. Brokers—Commissions—Sales Agreements—Listing Agreements—Expiration of Listing—Contracts—Land Contracts.

A real estate broker cannot recover its commission under a clause in a buy and sell agreement providing that "seller also agrees to pay broker above named a commission equal to 6% of the sale price for negotiating the sale" where the purchaser it had found for sellers' property was not able to secure financing in conformity with the buy and sell agreement and where finally some nine months after the listing agreement between the broker and the property owners had expired the sellers made a new agreement to sell to the same purchasers on land contract terms; a sale was never consummated according to the terms of the agreement and the broker cannot recover a commission for negotiating a sale that never took place.

References for Points in Headnotes

[1] 12 Am Jur 2d, Brokers §§ 183, 184.

[2] 12 Am Jur 2d, Brokers § 33.

[3–5] 12 Am Jur 2d, Brokers § 216 et seq.

Broker's right to commission on sales consummated after termination of employment. 27 ALR2d 1348.

[6, 7] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit §§ 4, 53 et seq.

53 Am Jur, Trial § 304 et seq.

4. BROKERS—SALES AGREEMENTS—EARNEST MONEY—CONTRACTS—
   TERMINATION OF CONTRACT—LISTING AGREEMENTS—EXPIRATION
   OF LISTING—LAND CONTRACTS.

   An agreement to mutually terminate a buy and sell agreement
   because of a potential purchaser's inability to secure financing,
   the real estate broker's refunding of the earnest money, and
   the lapse of a considerable period of time after the listing
   agreement had expired before the property owners had agreed
   to a new sale of the property on land contract, support a
   conclusion that the buy and sell agreement terminated prior to
   the land contract negotiations.

5. BROKERS—COMMISSIONS—PROCURING SALE—LISTING AGREEMENTS—
   EXPIRATION OF LISTING—LAND CONTRACTS.

   A real estate broker was not the procuring cause of a sale and
   was not entitled to a commission where while the ultimate
   purchaser learned of the property through the broker, it was
   not through the broker's efforts that the sale was made; the
   sale was a direct result of the efforts of the owners themselves·
   to willingly accommodate a buyer, who was experiencing finan-
   cial difficulties, with a land contract arrangement some nine
   months after the listing agreement had expired.

6. MOTIONS—MOTION TO DISMISS—INFERENCES—EVIDENCE—COURT
   RULES.

   A trial court, in ruling upon a motion to dismiss, is not required
   to give the plaintiff the advantage of every inference and the
   most favorable interpretation of the evidence (GCR 1963, 504.2;
   DCR 504.2).

7. MOTIONS—MOTION TO DISMISS—NONJURY TRIAL—JUDGES—FUNC-
   TION OF JUDGE—COURT RULES.

   A motion at the close of a plaintiff's proof for a dismissal on the
   ground that upon the facts and the law the plaintiff has shown
   no right to relief is available only in cases tried without a jury;
   the judge, in passing on the motion, may exercise his function
   as trier of facts, weighing the evidence, passing upon the
   credibility of witnesses, and selecting between conflicting infer-
   ences, and if his resulting findings of fact leave the plaintiff
   unqualified for relief, the action is to be dismissed (GCR 1963,
   504.2; DCR 504.2).

Appeal from Kent, John H. Vander Wal, J.
Submitted Division 3 June 4, 1974, at Grand Rap-
ids. (Docket No. 16909.) Decided August 27, 1974.

Complaint in district court by Murphy Real Estate Corporation against Harry H. Barron and Katherine Barron to recover a broker's commission under a buy and sell agreement. Defendants' motion to dismiss granted. Plaintiff appealed to circuit court. Affirmed. Plaintiff appeals on leave granted. Affirmed.

*Wiarda & Starr,* for plaintiff.

*Wierenga & Sevensma,* for defendants.

Before: HOLBROOK, P. J., and T. M. BURNS and R. L. SMITH,* JJ.

T. M. BURNS, J. We are here presented with the question of a broker's right to recover its commission under an exclusive listing contract, where a sale had not been consummated during the listing period, but where the owner later sold to an individual with whom the broker had negotiations.

On April 6, 1970, Mr. and Mrs. Harry H. Barron, defendants herein, signed an agreement with the plaintiff, Murphy Real Estate Corporation, giving the company the exclusive right to sell their home for a period of six months. The terms of the listing contract provided that payment of plaintiff's commission was contingent upon the occurrence of any of the following three events: (1) the sale of the property during the listing period by either the owner, the broker or anyone else; (2) the broker producing a purchaser ready, willing and able to purchase the property; or (3) the sale of the property within six months after the expiration of the listing agreement to any person to

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

whom the property had been shown during the listed period.

The listing contract called for a purchase price of $22,900 payable by cash, FHA or VA terms. Plaintiff discovered an interested buyer in one Rosa Mae Ledbetter. Mrs. Ledbetter submitted an offer set out in a buy and sell agreement dated June 22, 1970. The defendants then made a counteroffer which was accepted by the buyer. The agreement provided that:

"This offer is made contingent upon close of sale of buyer's property to the City of Grand Rapids. Buyer shall have the option to buy FHA or equity out. Buyer offers to rent said property for the sum of $150.00 per month until sale * * * . Buyer to pay utilities during rental period."

The buy and sell agreement called for a purchase price of $20,900 financed by a 30-year FHA mortgage. In compliance with paragraph 13 of the agreement, Mrs. Ledbetter, as evidence of her good faith, deposited $515 cash with the broker as earnest money.

Under the terms of the agreement, Mrs. Ledbetter took possession of the Barron home and was paying a monthly rental to the defendants. Everything went smoothly until it became apparent that Mrs. Ledbetter was having difficulty obtaining an FHA loan. Calvin Murphy, president of plaintiff corporation, assisted Mrs. Ledbetter in her three unsuccessful attempts to secure an FHA loan. This problem was compounded by the fact that the sale of the buyer's property to the City of Grand Rapids was delayed for several months and that Mrs. Ledbetter's eventual $1,700 condemnation payment from the city in March, 1971, was much less than she had expected.

This state of affairs continued until mid-1971, with several pieces of correspondence passing between Mrs. Ledbetter and the defendants. Finally, upon discovering that Mrs. Ledbetter's third application for an FHA loan had been rejected, defendants on May 22, 1971, wrote Mrs. Ledbetter a letter offering her another financing proposal. Mrs. Ledbetter and the defendants subsequently came to an agreement by which Mrs. Ledbetter would purchase the Barron home on land contract with terms similar to those in the original buy and sell agreement.

On July 15, 1971, Mrs. Ledbetter went to plaintiff's office and, without disclosing the existence of her new agreement with defendants, requested and received a refund of her earnest money deposit, stating that she needed the money for personal reasons. Murphy wrote across the front of the check "refund of earnest money 1609 Benj[amin], N.E.". Mrs. Ledbetter then took this money and applied it to the down payment on the land contract for the purchase of the Barron home which was signed that same afternoon, July 15, 1971.

Plaintiff, upon discovering the existence of the land contract, brought suit in district court to recover its commission under the buy and sell agreement. Defendants answered that the buy and sell agreement was terminated and never consummated according to its terms. A defense motion for summary judgment was denied and the case went to trial on May 8, 1972. At the conclusion of plaintiff's case, the district court granted the defendants' motion to dismiss because (1) the listing agreement had expired; (2) the buy and sell agreement was mutually terminated before the land contract was agreed upon; and (3) the land con-

tract was in no way a fulfillment of the buy and sell agreement.

Plaintiff appealed as of right to the Kent County Circuit Court on May 22, 1972. That court, by an opinion dated December 1, 1972, and order dated December 22, 1972, affirmed the judgment of the district court. Plaintiff now appeals by leave granted.

The sole issue before us on appeal is whether the buy and sell agreement terminated prior to July 15, 1971, the date Mrs. Ledbetter and the defendants entered into the land contract.

Plaintiff contends that the buy and sell agreement was still in effect and that it was still negotiating to complete the financing when defendants consummated the land contract without its knowledge. Defendants counter by arguing that the plaintiff failed to earn its commission since it failed to produce a buyer ready, willing and able to purchase their home during the listing period. Furthermore, defendants assert that the buy and sell agreement was mutually terminated and that it was their own efforts which produced the ultimate sale of their property by land contract.

The exclusive listing agreement dated April 6, 1970, provides the terms under which the parties agreed to the payment of a commission for the sale of defendants' property. Defendants gave plaintiff an exclusive right to sell their home for a period of six months ending on October 6, 1970. During this time their home was not sold nor did plaintiff produce a purchaser who was ready, willing and able to purchase the property on the terms stated. Also, the defendants' property was not sold within six months after the expiration of the listing agreement to a party who had been shown the property during the listing period.

Plaintiff maintains that it did produce a purchaser ready, willing and able to purchase the defendants' home, namely Mrs. Ledbetter. However, we are of the opinion that the only reasonable and proper interpretation of the "ready, willing and able" clause is that the purchaser must be ready, willing and able to purchase the property within the time limitations provided in the listing agreement. Here Mrs. Ledbetter was not "able" to purchase the property until July 15, 1971, some nine months after the expiration of the listing agreement. Since this listing agreement was on a form drawn up by the broker, any imperfections or ambiguities must be construed most strongly against it. *Hanley v Porter,* 238 Mich 617, 620; 214 NW 179 (1927). See also *Ladd v Teichman,* 359 Mich 587, 592; 103 NW2d 338 (1960). Under this construction of the listing agreement, it is clear to this Court that the plaintiff broker has failed to perform services within the time stated in the agreement entitling it to a commission. The lower court properly ruled that the agreement expired on its own terms on April 6, 1971, and that the plaintiff had not earned its commission as of that date.

Plaintiff also claims that it is entitled to its commission under clause 16 of the buy and sell agreement which provides as follows:

"Seller also agrees to pay broker above named a commission equal to 6% of the sale price for negotiating this sale * * * ."

As mentioned earlier, under the terms of this agreement, Mrs. Ledbetter had the option to either buy the equity out or to obtain an FHA or VA mortgage. Unfortunately, she could do neither, as evidenced by her three unsuccessful attempts to

obtain an FHA mortgage. A sale was never consummated according to the terms of the agreement and, therefore, we feel that the plaintiff broker cannot recover a commission for negotiating a sale that never took place. Plaintiff thus cannot recover its commission under clause 16 of the agreement since no sale was ever negotiated under that agreement.

We are also not impressed with plaintiff's contention that the buy and sell agreement was still in effect when defendants consummated the land contract transaction with Mrs. Ledbetter. After reviewing the correspondence in this case, we are convinced that the parties mutually agreed to terminate the buy and sell agreement and to try to find another method of financing the transaction. Plaintiff refunded the earnest money deposit to Mrs. Ledbetter. While it is true that plaintiff was unaware of the fact that this money was to be used as part of the down payment on the land contract, the fact still remains that plaintiff wrote on the face of the refund check that it was a refund of earnest money on the property in question. The lower court found that this was an indication of plaintiff's feelings that due to Mrs. Ledbetter's inability to obtain an FHA mortgage, the deal was finished. Under the circumstances of this case, we feel that the lower court's conclusion was reasonable. Therefore, contrary to plaintiff's contention, the parties' intent to mutually terminate the contract, the broker's refunding of the earnest money, and the lapse of a considerable period of time without final action all combine to support our conclusion that the buy and sell agreement terminated prior to the land contract negotiations.

Plaintiff finally argues that it was entitled to a

commission because it was the procuring cause of
the sale of defendants' property. However, in order
to recover under this theory plaintiff must show
that it was the procuring cause of the sale, that
the purchaser learned of the property through
plaintiff, and that through its efforts the sale was
made. *Pittelkow v Jefferson Park Land Co,* 283
Mich 374, 378; 278 NW 102 (1938). Plaintiff in the
case at bar has failed to meet the last of these
listed criteria, for while it is true that the ultimate
purchaser learned of the property through the
plaintiff, it was not through plaintiff's efforts that
the sale was made. Indeed, the sale in this case
was a direct result of the efforts of the owners
themselves to willingly accommodate a buyer who
was experiencing financial difficulties. This is
borne out by the various correspondence between
defendants and the purchaser and by the actual
terms of the land contract which differed some-
what from the terms of the buy and sell agree-
ment. Since it was through the defendants' efforts
that the ultimate sale was made, it cannot be said
that plaintiff was the procuring cause of the sale.

Finally, we feel duty bound as an appellate
court to clear up what appears to be a popular
misconception as to the correct standard to be
applied by the trial court when ruling upon a
defendant's motion to dismiss, made at the close of
plaintiff's proofs. The motion to dismiss in the
instant case was filed in accordance with District
Court Rule 504.2, which is based in part upon GCR
1963, 504.2. Plaintiff, in its brief, makes the follow-
ing statement:

"The facts stated herein are either admitted or must
be taken as the accepted facts of the case because of the
rule that on a motion to dismiss made at the close of
the plaintiff's proofs, the testimony and the inferences

to be drawn therefrom must be viewed in the light most favorable to the plaintiff."

Plaintiff's interpretation of GCR 1963, 504.2 is incorrect. The proper interpretation of the rule was given by this Court in *Illenden v Illenden,* 46 Mich App 710, 715–716; 208 NW2d 565 (1973), wherein we stated:

"In ruling upon a motion to dismiss, the trial court is not required to give the plaintiff the advantage of every inference and the most favorable interpretation of the evidence. Thus, the function of the trial court in ruling upon a motion to dismiss is very different from ruling upon a motion for a directed verdict. The difference is set forth in 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 332–333:

" '6. Involuntary Dismissal for Failure to Establish Right to Relief

" 'The second sentence of a sub-rule 504.2 introduces an innovation in Michigan practice—a motion at the close of plaintiff's proof for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In time and purpose, this motion is similar to the motion for a directed verdict, but it differs in that it is available only in.cases tried without a jury. Consequently the function of the judge in passing upon the motion is different from his function in passing upon the motion for a directed verdict. The judge is not limited to determining whether plaintiff's evidence is legally sufficient to go to the jury. *He may exercise his function as trier of facts, weighing the evidence, passing upon the credibility of witnesses, and selecting between conflicting inferences, and if his resulting findings of fact leave the plaintiff unqualified for relief, the action is to be dismissed.* In response to this motion, there is no application of the usual rule on a motion for a directed verdict that plaintiff is to be given the advantage of every inference and the most favorable interpretation of the evidence. If the court renders judgment against the plaintiff under this provision, the judge is specifically required to make findings of fact as

provided in Rule 517. The defendant can make a motion to dismiss under this provision without waiving his right to offer evidence of his own.' (Emphasis added.)"

Thus the trial court acted properly in this case when it made an independent determination of the facts.

Affirmed.