CRAIB v COMMITTEE ON NATIONAL MISSIONS OF THE
PRESBYTERY OF DETROIT OF THE UNITED PRESBYTERIAN
CHURCH, U.S.A.

1. CONTRACTS—INTERPRETATION—QUESTION OF LAW.

    The meaning of language contained in a written contract which
    is not ambiguous is a question of law for the court.

2. CONTRACTS—STATUTE OF FRAUDS—COMMISSIONS—REAL ESTATE—
    DURATION OF CONTRACT—TERMS—DISCLOSURE.

    The statute of frauds requires that every contract to pay a
    commission for or upon the sale of any interest in real estate
    must be in writing and signed by the party to be charged or by
    a lawfully authorized agent; a memorandum purporting to
    extend the duration of a broker's contract must sufficiently
    disclose the terms of the agreement if it is to meet the require-
    ments of the statute.

3. BROKERS—REAL ESTATE—BROKER'S COMMISSION—TERMS—FULL
    PERFORMANCE—COURTS.

    A real estate broker may recover a commission on a broker's
    contract only where he can show performance of the terms of
    the contract; his right to compensation can only be based on
    full performance and the court must look to the terms of the
    contract to determine exactly how the commission is to be
    earned.

4. BROKERS—COMMISSIONS—SELLERS—PROFIT—TERMS OF AGREEMENT
    —EXPIRATION.

    Recovery of a real estate broker's commission was not justified
    even though the seller had profited from the broker's efforts
    where the only stated method of earning the commission was
    upon consummation of the sale within nine months of the
    agreement, the seller signed no exclusive listing agreement, the
    agreement expired by its own provisions, and the period of

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contracts §§ 241, 245–248, 273.
[2] 73 Am Jur 2d, Statute of Frauds § 554 *et seq.*
[3–5] 12 Am Jur 2d, Brokers §§ 157–159.

negotiations and bargaining extended to a time long after the termination of the contract.

5. Brokers—Revocation of Authority—Good Faith—Compensa-
    tion—Subsequent Sale.

    A revocation of authority by an owner in good faith before a real estate broker has complied with the terms of the contract deprives the broker of his right to compensation for a subsequent sale resulting from the broker's efforts.

Appeal from Macomb, Hunter D. Stair, J. Submitted May 13, 1975, at Detroit. (Docket No. 20703.) Decided July 22, 1975.

Complaint by Rupert Craib against the Committee on National Missions of the Presbytery of Detroit of the United Presbyterian Church, U.S.A. and Peace Presbyterian Church for damages for breach of contract. Judgment for plaintiff. Defendants appeal. Reversed.

*Donnelly W. Hadden,* for plaintiff.

*Bacalis, Kostecke & Associates, P. C.,* for defendants.

Before: T. M. Burns, P. J., and M. F. Cavanagh and O'Hara,* JJ.

M. F. Cavanagh, J. On July 8, 1969, plaintiff broker produced a written offer by Vogue Management Company to purchase a certain parcel of property adjacent to Peace Presbyterian Church. The property was owned by the defendants, two ecclesiastical corporations. The offer was conditional upon the property being rezoned for multiple family use and upon a closing within 30 days of the rezoning but not later than nine months

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

after the seller's acceptance. Also included in the contract proposed by Vogue Management Company was a provision for the seller's payment of a broker's commission to the plaintiff upon consummation of a sale.

On November 7, 1969, the offer was accepted contingent upon approval by the congregation and corporation of Peace Church and upon the approval of the Presbytery of Detroit. These two approvals were given shortly after the acceptance. It is undisputed, however, that the rezoning condition was not accomplished until January of 1971.

Subsequent to July 7, 1970, when the nine month time limitation of the agreement expired without a closing, Vogue Management Company and the defendants continued to negotiate. Vogue extended a number of offers to the defendants with varying terms. A dispute between the two resulted in a litigation which was finally settled on January 28, 1972. In the settlement, the defendants sold the property to Vogue under considerably different terms than the 1969 agreement. The final agreement contained no provision for the payment of a broker's commission. When the defendants refused to pay plaintiff a commission, plaintiff instituted this action.

Defendants-appellants argue on appeal that the trial court erred in permitting the jury to evaluate whether the 1969 agreement was extended in a manner satisfying the statute of frauds.

Much of the present controversy revolves around the effect of a "Certified Copy of Action by the Presbytery of Detroit" signed by the Stated Clerk of the Presbytery on January 25, 1972. The defendants were required to gain permission for the sale from this parent judicatory entity. The Presbytery first granted permission to sell the property

under the 1969 agreement terms on January 27, 1970. The certificate of action recites that permission was given and further certifies "that said action has not been set aside or rescinded and remains in full force and effect". A certificate in this form dated February 18, 1970, was given to Vogue Management Company. Later on January 25, 1972, just prior to consummation of the sale, another such certificate utilizing the same language was presented to the purchaser.

At trial the plaintiff argued that, although the 1969 agreement was terminated by operation of its own conditions, this agreement was extended by the January 25, 1972, certificate. Further, he argued that the certificate, along with the 1969 offer and acceptance, satisfied the statute of frauds. Apparently concluding that the language of the certificate was ambiguous, the trial court submitted the matter to the jury for resolution.

Where the language of a writing is not ambiguous, its construction is a question of law for the court. *Dykema v Muskegon Piston Ring Co,* 348 Mich 129; 82 NW2d 467 (1957). It is the duty of the court, not the jury, to define what is and what is not within the terms of a written contract. *Curbelo v Macomb County Community College Trustees,* 38 Mich App 432, 435; 196 NW2d 843 (1972).

We conclude that the meaning of the certificate of action is unambiguous and that the document cannot constitute an extension of either the 1969 buy and sell agreement or the broker's contract. The signatory of the certificate was not the purchaser, the seller or the broker. Moreover, by the plain language of the document the Presbytery merely stated that it had not rescinded its grant of permission to the defendants to sell the property.

Not only was it erroneous to submit this matter to the jury, but the conclusion reached—that the certificate constituted a written extension—was also in error.

The Michigan statute of frauds, MCLA 566.132; MSA 26.922, requires that every contract to pay a commission for or upon the sale of any interest in real estate must be in writing and signed by the party to be charged or by a lawfully authorized agent. Although there has been considerable judicial debate as to exactly what must be contained in the writing of a broker's contract, it is clear that the memorandum must sufficiently disclose the terms of the agreement. *Benedek v Mechanical Products, Inc,* 314 Mich 494, 502, 514; 22 NW2d 901 (1946). See also *Paul v Graham,* 193 Mich 447; 160 NW 616 (1916), *Cochran v Staman,* 201 Mich 630; 167 NW 1015 (1918), and *Farah v Nickola,* 352 Mich 513; 90 NW2d 464 (1958).

Under these principles, it must be concluded that only the provisions of the July 8, 1969, offer by Vogue Management Company, regarding a broker's commission, can satisfy the statute of frauds. This buy and sell agreement was conditional upon a rezoning and closing within nine months of the seller's acceptance. These conditions did not occur. Thus, the crucial question in this appeal is whether a broker should be entitled to a commission based on an agreement which expired before the terms of the broker's contract were satisfied.

Plaintiff argues that a broker's right to a commission does not depend upon consummation of a sale, but upon procuring a buyer ready, willing and able to buy on terms acceptable to the seller. He relies primarily upon *West v Newton,* 229 Mich 68; 201 NW 196 (1924). *West* involved an exclusive listing agreement, the terms of which

stated that the broker was to be paid a commission upon sale of property "for $300 an acre or any other sum" defendants might accept. After the agency expired, the purchaser and owner contracted to sell the property for $285 an acre. The Court held that the broker had fulfilled the contract's terms by producing a purchaser willing to pay a sum which the defendants were willing to accept.

In *West,* the plaintiff contended that the owner waited until the exclusive listing agency had expired before concluding a sale in order to avoid the payment of a commission. *West, supra,* 229 Mich 68, 70. The Court concluded that the defendants could not refrain from paying the commission by canceling the agency and making the sale themselves. *Id.* at 72. In contrast, there was no allegation that the owners in the present case sought in bad faith to avoid payment of a commission.[1] The consummation occurred more than two years after the original buy and sell agreement and after considerable negotiations. Additionally, the relationship between the broker and owner was not, in this case, an exclusive listing agreement.

The plaintiff's position that a broker, in all cases, need only produce a ready, willing, and able prospect is not borne out by the cases. Ordinarily, in order for a real estate broker to recover a commission on a broker's contract, he must show performance of the terms of the contract. *Pittelkow v Jefferson Park Land Co, Ltd,* 283 Mich 374; 278 NW 102 (1938). His right to compensation can

[1] The case law is somewhat hazy in this area. A revocation of authority by an owner in good faith before the broker has complied with the terms of the contract deprives the latter of compensation for a subsequent sale resulting from the broker's efforts. *Holmes Realty Co v Silcox,* 194 Mich 59, 62; 160 NW 465 (1916). *See also Hayman Management Co v Dura Corp,* 45 Mich App 522, 525; 206 NW2d 754 (1973).

only be based on full performance of his employment contract, and the court must look to the terms of the contract to determine exactly how the commission is to be earned. *Horton v Immen,* 145 Mich 438; 108 NW 746 (1906). See also 4 *Michigan Law and Practice,* Brokers, §§ 51, 54, pp 342–343, 349–352.

The terms of the broker's contract in the present case, contained in the offer extended by the prospect he had procured, were that the seller agreed to pay a commission "upon consummation" of the sale. This agreement, however, lapsed by its own conditions prior to a closing. A different agreement involving different terms as to price, method of payment and other matters, was entered into over two years after the initial acceptance. During that time, the prospective purchaser and seller negotiated intermittently and even went into court to effect a transaction. Plaintiff did not plead nor attempt to prove bad faith in not consummating a sale within the stated time limitations of the agreement.

This Court in *Murphy Real Estate Corp v Barron,* 55 Mich App 210; 222 NW2d 184 (1974), was confronted with a similar question. The defendants signed an agreement giving the plaintiff an exclusive right to sell their property for a period of six months. Payment of the broker's commission was contingent upon any one of the following: sale of the property during the listing period; the broker's production of a ready, willing and able purchaser; or sale of the property within six months after the expiration of the listing agreement to any person to whom the property had been shown during the listed period. Within the listing period, a buy and sell agreement was effected with an interested purchaser produced by the plaintiff. The latter

took possession of the home and was paying rent for over a year while she attempted to resolve financing difficulties. About nine months after the listing period had expired, the prospective purchaser, without disclosing a new agreement with the homeowner, requested and received a refund of her earnest money deposit from the broker. This money was then paid to the homeowner as a down payment under a contract with different terms than the original agreement.

In an action by the broker for a commission, this Court accepted the defendants' argument that the buy and sell agreement was terminated and was never consummated according to the terms of the broker's contract. The purchaser was not "able" to purchase the property until after the expiration of the listing agreement. 55 Mich App 210, 216. Also, the broker was not the procuring cause of the sale since the sale was effected through the efforts of the owner in accommodating the buyer's financial problems. *Id.* at 218.

The present case involves circumstances in some respects even more favorable to the defendants than *Murphy.* The only stated method of earning a broker's commission in the present case is "upon consummation". This provision was contained in the purchaser's offer, which was conditioned upon a closing within nine months. The seller signed no exclusive listing agreement; it only accepted the offer with these conditions. Moreover, in the present case, it is clear that the first agreement was terminated by the contract's own provisions. Finally, the period of time for negotiations and the bargaining necessary to effect a sale was even more extensive in the present case. We conclude that the holding and rationale of *Murphy* apply *a fortiori* to this case.

This conclusion is supported by other cases in this jurisdiction. *Schmidt v Maples,* 291 Mich 225; 289 NW 140 (1939), *Holmes Realty Co v Silcox,* 194 Mich 59; 160 NW 465 (1916), *Beadle v Sage Land & Improvement Co,* 140 Mich 199; 103 NW 554 (1905), *Antisdel v Canfield,* 119 Mich 229; 77 NW 944 (1899). Although the jury may have been rightly sympathetic with the broker's situation since he originally brought the two parties together, the fact that others have profited through his efforts does not alone justify a recovery:

" 'The broker may devote his time and labor, and expend his money, with ever so much of devotion to the interests of his employer, and yet, if he fails, if without an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses the labor and effort which was staked upon success. And in such event it matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal. In a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest; but all this gives him no claim. It was part of his risk that failing himself, not successful in fulfilling his obligations, others might be left to some extent to avail themselves of the fruit of his labors.' " *Holmes Realty Co v Silcox,* 194 Mich 59, 62–63.

The judgment and recovery in favor of the plaintiff is reversed. Costs to defendants.