JACKSON v DEPCO EQUIPMENT COMPANY

Docket No. 52798. Submitted December 9, 1981, at Detroit.—Decided April 22, 1982.

Charles Jackson and Lowell Stockman were injured when a crane in which they were working as carpenters for Jutton Kelly Company malfunctined causing the basket in which they were standing to fall approximately 45 feet to the concrete below. The crane was manufactured by Manitowac Engineering Company and had been repaired for a clutch overhaul 18 months previously by employees of Depco Equipment Company. Charles Jackson and his wife, Lowell Stockman and his wife, and Michigan Mutual Liability Insurance Company, as subrogee of Jutton Kelly which had paid workers' compensation benefits to Jackson and Stockman, filed separate actions in Wayne Circuit Court against Depco Equipment Company, Manitowac Engineering Company and Speedway Wrecking Company. The cases were consolidated by the circuit court. Subsequently, a settlement agreement was reached with Manitowac and an order was entered dismissing Manitowac and Speedway Wrecking. The court, John M. Wise, J., entered judgment on a jury verdict for the plaintiffs. The settlement agreement between plaintiff Charles Jackson and Manitowac provided that any award to Jackson for damages against Depco should be reduced by the settlement figure. As a result, Jackson's award against Depco

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 493.
[2] 23 Am Jur 2d, Depositions and Discovery §§ 101, 103.
   29 Am Jur 2d, Evidence §§ 689, 696.
   81 Am Jur 2d, Witnesses § 603.
[3] 5 Am Jur 2d, Appeal and Error §§ 603, 604.
[4] 58 Am Jur 2d, New Trial §§ 212, 223.
[5] 5 Am Jur 2d, Appeal and Error § 836.
   22 Am Jur 2d, Damages §§ 398, 399.
[6] 4 Am Jur 2d, Appeal and Error §§ 539, 544.
   5 Am Jur 2d, Appeal and Error § 783.
   75 Am Jur 2d, Trial § 91.
[7] 75 Am Jur 2d, Trial § 589.
   81 Am Jur 2d, Workmen's Compensation § 72.

was reduced to zero. Plaintiffs Charles Jackson, his wife and Michigan Mutual moved for additur or, in the alternative, a new trial, which motions were denied by the trial court. The Jacksons and Michigan Mutual appeal the award to Charles Jackson alleging that: (1) the trial court erred by allowing the defendant to impeach Charles Jackson with his answers to certain interrogatories; (2) Charles Jackson was prevented from testifying about his fright, shock, embarrassment and mental anguish to the extent that he was denied a fair trial on the question of damages; (3) the trial court erred in failing to instruct the jury that they should not consider the fact that Charles Jackson may have received workers' compensation benefits in determining the size of the verdict; (4) the trial court erred in allowing admission of a written statement of a physical therapist contained in the medical records of Charles Jackson's treating physician indicating that Jackson was un-cooperative with regard to the rehabilitation program pre-scribed by his physician; (5) the trial court erred in allowing one of the defendant's employees to testify that an employee of the defendant who had performed maintenance work on the crane was an outstanding repairman; (6) the jury verdict was grossly inadequate because of a failure to encompass allegedly uncontroverted out-of-pocket expenses and thus the trial court should have granted to Charles Jackson a new trial; and (7) the trial court's treatment of Charles Jackson's counsel was of such a nature as to damage his case. *Held:*

1. There is no merit to the plaintiffs' argument that the trial court erred in allowing the defendant to impeach plaintiff Charles Jackson with Jackson's answers to interrogatories. The particular answer in question was not used to prove the truth of the matter asserted. The answers were properly used for impeachment.

2. There is no merit to plaintiffs' argument that Charles Jackson was prevented from testifying about his fright, shock, embarrassment and mental anguish to the extent that he was denied a fair trial on the question of damages. Charles Jackson's substantial rights were not prejudiced by the ruling in question because plaintiff Charles Jackson presented ample testimony as to his own pain and suffering, that of his wife, and as to the mutual effect of each other's damages upon their relationship.

3. The trial court did not err in failing to instruct the jury that they should not consider the fact that Jackson may have received workers' compensation benefits in determining the size of the verdict because it is apparent from the record that the

jury did not consider such a fact and therefore no prejudice could have resulted. No evidence of compensation to Jackson from a collateral source was introduced.

4. The admission of the part of the physical therapist's report which states that Charles Jackson was not cooperative is the conclusion of the therapist and should not have been admitted. The statements indicating descriptions of the acts of plaintiff Charles Jackson upon which the therapist based his conclusion were admissible. The Court of Appeals declines to reverse the decision on the basis of the improper admission of hearsay testimony because the exclusion of the sentence which states the conclusion could have made little difference in the result.

5. The trial court may have erred in allowing one of the defendant's employees to testify that an employee of the defendant who had performed maintenance work on the crane was an outstanding repairman. However, any error was harmless and reversal would be inappropriate.

6. There is no merit to the plaintiffs' claim that the jury verdict was grossly inadequate because of a failure to encompass allegedly uncontroverted out-of-pocket expenses. The damages were controverted and the verdict was not so clearly and grossly inadequate in light of the evidence presented that it shocks the judicial conscience.

7. The plaintiffs' claim that the trial court's treatment of counsel for Charles Jackson was of such a nature as to damage his case is unfounded. The trial court's rulings and criticism of Jackson's counsel was done in the normal course of the trial court's duty to control the proceedings.

Affirmed.

R. M. Maher, J., dissented. He would reverse and remand the case for a new trial because he feels that the jury may have interpreted the court's instruction following the jury's question regarding workers' compensation to mean that they were supposed to take into account workers' compensation benefits with respect to both accident victims, with respect to one victim but not the other, or with respect to neither.

### Opinion of the Court

1. Evidence — Hearsay — Rules of Evidence.

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted (MRE 801[c]).

2. Evidence — Interrogatories — Court Rules.

A party's answers to interrogatories may be used for the same

purpose as depositions may be used under the Michigan Court Rules; a deposition may be used to impeach the deponent (GCR 1963, 302.4, 308.4).

3. EVIDENCE — RULES OF EVIDENCE.

A party may not predicate error upon a ruling of the court on the exclusion of evidence unless a substantial right of that party is affected and unless the substance of the evidence had been made known to the court by offer of proof or is apparent from the nature of the question (MRE 103[a]).

4. MOTIONS AND ORDERS — NEW TRIAL — COURT RULES.

The granting or denial of a motion for a new trial is within the discretion of the trial court, and the granting or denial of a motion for a new trial based upon inadequate damages will be reversed on appeal only where the trial court has palpably abused its discretion (GCR 1963, 527.1[4], 527.6).

5. JURY — INADEQUATE VERDICTS.

The well-settled rule is that where a jury verdict ignores the uncontroverted out-of-pocket expenses of a plaintiff, such verdict is inadequate on its face and should be reversed; the question which must be answered is whether the jury verdict was so clearly and grossly inadequate and so contrary to the great weight of the evidence pertaining to the damages sustained by the plaintiff as to shock the judicial conscience.

6. APPEAL — COLLOQUY BETWEEN JUDGE AND COUNSEL.

The test to be applied in reviewing a claim that a trial judge committed prejudicial error in his verbal exchanges with the appellant's attorney is whether or not the appellant was denied a fair and impartial trial; in such a determination the record must be reviewed as a whole and not in pieces taken out of context.

DISSENT BY R. M. MAHER, J.

7. NEGLIGENCE — JURY INSTRUCTIONS — WORKERS' COMPENSATION.

*A negligence case on appeal from a circuit court involving two plaintiffs who are coworkers should be reversed by the Court of Appeals where the jury while deliberating the case asked the trial court whether they should consider any workers' compensation benefits being received by one plaintiff and the trial judge instructed the jury that he could not answer the question but that the jury was bound by the testimony and exhibits introduced; there is no way of knowing how the jury may have interpreted the instruction as to the other plaintiff.*

*Rifkin, Kingsley & Rhoades, P.C.,* for plaintiffs.

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Robert F. Riley),* for defendant.

Before: D. C. RILEY, P.J., and R. M. MAHER and CYNAR, JJ.

PER CURIAM. Plaintiffs, Charles and Donna Jackson and Michigan Mutual Liability Insurance Company appeal as of right from a July 7, 1980, order entered in the Wayne County Circuit Court denying their motion for additur or, in the alternative, a new trial under GCR 1963, 527.1. On November 30, 1979, plaintiff Charles Jackson received a jury verdict for damages in the amount of $50,000. Plaintiff Donna Jackson, his wife, received a verdict of $10,000. Plaintiff Michigan Mutual Liability Insurance Company is the subrogee of plaintiff Charles Jackson's employer, Jutton Kelly Company, who paid $22,000 to Jackson as workers' compensation. Coplaintiffs Lowell Stockman and Peggy Stockman, his wife, received jury verdicts for damages in the amounts of $175,000 and $25,000 respectively. They have not appealed those awards, and any reference to plaintiffs in this opinion does not include them. Prior to the trial, the plaintiffs had settled their claims against Manitowac Engineering Company for $50,000, and it was agreed that any jury verdict would be reduced by that amount. Plaintiff Charles Jackson's verdict was, therefore reduced to nothing.

Plaintiff Charles Jackson and Lowell Stockman were injured when a crane in which they were working as carpenters for Jutton Kelly, and which was manufactured by Manitowac, malfunctioned, causing the basket in which they were standing to fall approximately 45 feet to the concrete below.

Defendant Depco Equipment Company was sued for negligence in inspecting and maintaining the crane in question. The jury found that defendant was liable for the injuries and the question of liability is not challenged on appeal. Plaintiffs contest the size of the verdict as inadequate and also challenge various rulings of the trial court as they pertain to the issue of damages. The specific challenge is to the award to plaintiff Charles Jackson, not that of his wife. Throughout this opinion, Charles Jackson will be referred to as the plaintiff.

There is no merit to the plaintiff's argument that the trial court erred in allowing the defendant to impeach the plaintiff with the plaintiff's answers to interrogatories. The particular answer in question was not used to prove the truth of the matter asserted, and therefore was not hearsay. MRE 801(c). It is clear from the record that the answer was properly used to impeach the plaintiff. The question concerned the cause of the accident, which issue was resolved in plaintiff's favor. The plaintiff's contention that the jury must have reached a compromise verdict on the issue of damages partly as a result of the impeachment amounts to nothing more than the statement of a conclusion, and we do not consider the trial court's ruling erroneous in any way. Answers to interrogatories may be used to the same extent as provided in subrule GCR 1963, 302.4 regarding the use of depositions of a party. GCR 1963, 309.4. A deposition may be used to impeach the deponent. GCR 1963, 302.4(1). Specific authority exists for the trial court's ruling and no prejudice appears to have resulted.

There is no merit to the plaintiff's argument that he was prevented from testifying about his fright, shock, embarrassment and mental anguish

to the extent that he was denied a fair trial on the question of damages. The plaintiff bases this claim on two rulings by the trial court one of which related to the coplaintiff Stockman, and is therefore irrelevant. The other ruling by the court sustained an objection which prevented plaintiff from testifying as to his feelings upon seeing his wife in tears when she saw him in the hospital after the accident.

The plaintiff may not predicate error upon a ruling which excludes evidence unless a substantial right of his is affected and the substance of the evidence is made known to the court by offer of proof or is apparent from the nature of the question. MRE 103(a). We conclude that the plaintiff's substantial rights were not prejudiced by the ruling in question since the plaintiff presented ample testimony as to his own pain and suffering, that of his wife, and as to the mutual effect of each other's damages upon their relationship.

The plaintiff claims that the trial court erred in failing to instruct the jury that they should not consider the fact that the plaintiff may have received workers' compensation benefits in determining the amount of the damages. This claim of error fails because it is apparent from the record that the jury did not consider such a fact, and therefore no prejudice could have resulted. No evidence of compensation to plaintiff from a collateral source was introduced. One reference to contact with workers' compensation personnel was made in relation to plaintiff's efforts to seek employment after the accident. The trial court ruled that the elicitation of such a reference was not deliberate and so a mistrial would not be granted.

After the jury began its deliberations, the trial court received a note from the jury and made the following response:

"*The Court:* Ladies and gentlemen of the jury, your foreman evidently sent this note: 'Do we take into consideration Mr. Stockman's workmen's compensation and disability that he is receiving?'

"In all frankness, ladies and gentlemen of the jury, I can't answer that question. You are bound by the testimony that you heard from the witness stand and any exhibits that may have been introduced into evidence. I think that is all the information I can give you. It is a field in the grey area. I can't comment on it, I can't answer the question. You are bound by the testimony that you heard and any exhibits that may be introduced into evidence. So you may go back to you deliberations and deliberate further."

Because the inquiry referred specifically to co-plaintiff Stockman and made no reference to the plaintiff, we are confident that the jury did not consider plaintiff to have been in receipt of workers' compensation benefits. Any error was, therefore, harmless. GCR 1963, 529.1.

We feel supported in this conclusion by the disparity of the injuries suffered by the parties. When the crane basket fell, the plaintiff was injured by the impact on the concrete surface below. His coworker, however, was also struck from above by the descending ball and hook assembly from which the basket was suspended. It appears that Stockman's injuries were more serious than plaintiff's injuries and necessitated a series of operations. The plaintiff was in the hospital for approximately three hours after the accident while Stockman was unconscious for several days. The plaintiff at one point stated that he sought work which he might have been unable to perform, explaining that he "* * * had to try. My family was starving. I had to do something." In spite of the trial court's instruction to disregard the remark, we think it likely that the false implication was effectively

communicated to the jury that the plaintiff had no collateral source of income.

Finally, no statement was made before the jury that the plaintiff was actually in receipt of workers' compensation benefits. The plaintiff stated that he had been referred to a rehabilitation nurse by the Bureau of Workers' Disability Compensation. To conclude that such a statement informs the jury that plaintiff was in receipt of benefits involves an inference which we are not inclined to make in the instant case, particularly in light of the plaintiff's claim that his family was starving.

The plaintiff claims that the trial court erred in allowing admission of a written statement of a physical therapist contained in the medical records of the plaintiff's treating physician indicating that the plaintiff was uncooperative with regard to the rehabilitation program prescribed by his physician, Dr. Richard Kamil. The deposition of Dr. Kamil was read into the record.

Prior to the reading of Dr. Kamil's deposition, plaintiff, outside the presence of the jury, requested a ruling on an objection, made at the time of the deposition, to the following question:

"*Mr. Rhodes:* George Steel, who was an attorney for Manitowac. Mr. Riley is reading his questions in. Mr. Steel was questioning Dr. Kamil concerning the report of the physical therapist of Sinai Hospital and, specifically on page 42, the first line, Mr. Steel asks this question:

"*Q.* What did the therapist indicate to you Mr. Jackson's attitude was with the therapy?

"And I objected to that as calling for a hearsay response since the attorney was asking Dr. Kamil to tell us what somebody else told him."

In response to that question, Dr. Kamil apparently

read a written report from the therapist which was contained in Dr. Kamil's own file (the trial court read the report into the record):

*"The Court:* October 31st, 1973: patient's range of motion right ankel *[sic]* has not improved. Over the past two weeks, patient is not cooperative. He gets his whirlpool and will only stay for 15 minutes for exercises and refused to do what I asked him to do then leaves.

"Finish the statement above. This has happened the last two treatments. May I take him off scheduled *[sic]?"*

The court ruled that the written report was incorporated into the records of Dr. Kamil and was, therefore, admissible, apparently under MRE 803(6).

MRE 803(6) provides as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*   \*   \*

"(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, or events, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

It appears from plaintiff's brief that he does not

challenge the foundation requirements that the report be made by one with knowledge of the facts and that it be made in the course of a regularly conducted business activity. The plaintiff argues that the report was not of an act, transaction, occurrence or event.

That part of the report which states that the plaintiff was not cooperative is the conclusion of the therapist, and should not have been admitted. The statements immediately following that remark, however, are admissible. They are descriptions of the acts of the plaintiff upon which the therapist based his conclusion. To admit the latter and exclude the former certainly draws a fine distinction, but it is one mandated by MRE 803(6).

Generally, error may not be predicated on a ruling which admits evidence unless a substantial right of a party is affected. MRE 103(a)(1). The jury would have drawn the same inference (that the plaintiff was uncooperative) from the acts described as did the therapist. We think that the exclusion of the sentence which states the conclusion would have made little difference and we, therefore, decline to reverse on grounds of the improper admission of hearsay testimony.

The plaintiff claims that the trial court erred in allowing one of the defendant's employees to testify that an employee of the defendant who had performed maintenance work on the crane was an outstanding repairman. While the trial court may have erred in allowing the testimony, we conclude that any error was harmless, and that reversal is therefore inappropriate. GCR 1963, 529.1. The testimony in question relates to the question of liability (specifically, whether or not defendant was responsible for causing the accident) which question was, as we have already pointed out, resolved

in favor of the plaintiff. There is no support for the plaintiff's conclusion that the amount of the verdict was compromised based on the question of liability.

There is no merit to the plaintiff's claim that the jury verdict was grossly inadequate because of a failure to encompass allegedly uncontroverted out-of-pocket expenses. This claim is based on the premise that plaintiff's claim of lost wages in excess of $80,000 is undisputed. This premise is not correct.

Plaintiff claimed at trial that he could not return to work for Jutton Kelly because he was unable to walk. Plaintiff testified, however, that one of the jobs he applied for after the injury was that of a mail carrier. Also, plaintiff's physician testified that he was able to walk with a satisfactory gait and without support. The physician also testified to, and x-rays revealed, a fairly good restoration of the anatomy of the heel bone and that the plaintiff demonstrated a normal heel-toe gait on level surfaces. Finally, plaintiff's physician expressed the opinion that the plaintiff was capable of doing something in the common labor market and that he would be a prime candidate for vocational rehabilitation or job training.

The plaintiff worked for Jutton Kelly for approximately two months as an apprentice carpenter. From this work period, the plaintiff extrapolated an alleged wage loss of over $80,000 at the time of trial. Plaintiff makes no adjustment for either the availability of construction work or the seasonal nature of the job as explained by the Jutton Kelly payroll clerk. Plaintiff's out-of-pocket expenses were not, therefore, conclusively demonstrated or uncontroverted.

The denial of a motion for a new trial is within

the discretion of the trial court and this Court will reverse the denial of a request for a new trial grounded upon inadequate damages only where the trial court has "palpably abused" its discretion. *Moore v Spangler,* 401 Mich 360, 372; 258 NW2d 34 (1977); *Chapin v Bechler,* 103 Mich App 629, 632; 303 NW2d 46 (1981). The "well-settled" rule is that where a jury verdict ignores the uncontroverted out-of-pocket expenses of the plaintiff, such verdict is inadequate on its face and must be reversed. *Moore, supra,* 372. The question which must be answered is whether the jury verdict was so "clearly and grossly inadequate" and so contrary to the great weight of the evidence pertaining to the damages sustained by the plaintiff as to shock the judicial conscience. *Moore, supra,* 373.

Applying the above principles of law to the instant case, we find that the damages were controverted and the verdict was not so clearly and grossly inadequate in light of the evidence presented that it shocks the judicial conscience.

Finally, the plaintiff claims that the trial court's treatment of plaintiff's counsel was of such a nature as to damage the credibility of the plaintiff's case. Our review of the record shows this claim to be unfounded. The trial court made rulings against the plaintiff and at times criticized plaintiff's counsel, but such was done in the normal course of the trial court's duty to control the proceedings. The actions complained of did not deny the plaintiff a fair and impartial trial. *Moldovan v Allis Chalmers Mfg Co,* 83 Mich App 373, 379-380; 268 NW2d 656 (1978).

Affirmed.

R. M. Maher, J. *(dissenting).* I respectfully dis-

sent. I do not share the majority's confidence that the jury did not assume that plaintiff Charles Jackson had received workers' compensation benefits. Even though no testimony suggesting that coplaintiff Stockman had received such benefits was brought before the jury, the jury apparently assumed that Stockman had received benefits. Consequently, it is illogical to conclude that the jury did not also assume that plaintiff had received workers' compensation benefits, since defense counsel elicited a specific reference to the plaintiff's receipt of such benefits.

Both plaintiff's and coplaintiff's counsel argued that the line of questioning by defense counsel that produced the reference to workers' compensation benefits amounted to a deliberate attempt to circumvent an earlier ruling by the trial court denying a request by defense counsel for permission to introduce evidence that the plaintiff had received such benefits.

It is certainly possible (though somewhat unlikely) that the jury did not take into account workers' compensation benefits in determining the size of plaintiff Charles Jackson's award, as the majority concludes. It is also possible that the jury did, in fact, deduct their estimate of the benefits plaintiff Charles Jackson was receiving from their estimate of Jackson's damages. The point is not whether the jury did or did not assume that Charles Jackson was receiving benefits, but that this Court *simply cannot tell.* If the trial court, after the jury indicated its confusion, had instructed the jury that it was not under any circumstances to take into account possible workers' compensation benefits in determining the size of the verdict, I would have little difficulty in concluding that the jury had not made such a deduc-

tion. However, this scenario did not occur; instead, the trial court abdicated its responsibility to guide the jury in its deliberations by responding to the jury's inquiry in the following fashion:

"*The Court:* Ladies and gentlemen of the jury, your foreman evidently sent this note: 'Do we take into consideration Mr. Stockman's workmen's compensation and disability that he is receiving?'

"In all frankness, ladies and gentlemen of the jury, I can't answer that question. You are bound by the testimony that you heard from the witness stand and any exhibits that may have been introduced into evidence. I think that is all the information I can give you. It is a field in the grey area. I can't comment on it, I can't answer the question. You are bound by the testimony that you heard and any exhibits that may be introduced into evidence. So you may go back to your deliberations and deliberate further."

The jury may have interpreted this "instruction" to mean that they were supposed to take into account workers' compensation benefits with respect to both accident victims,[1] with respect to one victim but not the other, or with respect to neither. I simply have no way of knowing what the jury did; I can only guess. Hence, reversal is required.

Plaintiffs' failure to object to the above-quoted instruction does not preclude review of this issue because the instruction did not embody an affirmative position on the issue of workers' compensation

---

[1] The majority explains the disparity between the two awards by emphasizing that the coplaintiff suffered much more serious injuries than the plaintiff. I agree that this provides a rational basis for the disparity between the two awards; however, this argument misses the point. It is entirely possible that the jury deducted workers' compensation benefits from *both* awards. If so, both plaintiff and coplaintiff would have received larger awards if the jury had been properly instructed.

benefits. If the trial court had told the jury that they were to take into account such benefits and the plaintiffs had failed to register an objection thereto, they would not be permitted to complain, on appeal, that the instruction was erroneous. However, in this case, the trial court essentially said nothing at all; hence, there was nothing to which plaintiffs could object.

I would also direct the trial court, on remand, to forbid the admission of the physical therapist's statement that plaintiff Charles Jackson had been uncooperative

I would reverse and remand for a new trial.