ZINCHOOK v TURKEWYCZ

Docket No. 56424. Submitted June 29, 1982, at Grand Rapids.—Decided July 21, 1983.

Plaintiff, Walter Zinchook, brought an action in the Livingston Circuit Court against defendants, Nadia Turkewycz, Julian S. Turkewycz, and Ann Turkewycz, jointly and severally, alleging breach of a construction contract. The defendants brought a cross action action against plaintiff alleging breach of the same contract. The construction contract, building and escrow agreements involved in the dispute were for the purpose of the construction of a "roughed-in" house by plaintiff, a licensed builder, for Nadia Turkewycz on property co-owned with Ann and Julian, her two children. Following a series of disputes between the parties, the defendants discharged plaintiff and had the structure completed by other contractors. Plaintiff sought $26,448.99 in damages and defendants sought $45,444.73 in damages which they allegedly incurred in completing the construction. Plaintiff claimed that he had substantially per-

REFERENCES FOR POINTS IN HEADNOTES
[1] 22 Am Jur 2d, Damages § 398.
[2] 58 Am Jur 2d, New Trial §§ 149, 153.
    Propriety of limiting to issue of damages alone new trial granted on ground of inadequacy of damages awarded. 29 ALR2d 1199.
[3] 76 Am Jur 2d, Trial § 1122.
    Polling of jury in civil cases. 71 ALR2d 640.
[4] 5 Am Jur 2d, Appeal and Error § 545 et seq., 891.
    75 Am Jur 2d, Trial §§ 583, 584.
[5] 4 Am Jur 2d, Appeal and Error § 533 et seq.
[6] 17 Am Jur 2d, Contracts §§ 22, 75, 241.
[7] 13 Am Jur 2d, Building and Construction Contracts §§ 41-43.
    17 Am Jur 2d, Contracts §§ 375-378.
    Cost of correction or completion, or difference in value, as measure of damages for breach of construction contract. 76 ALR2d 805.
[8] 17 Am Jur 2d, Contracts § 378.
[9] 30 Am Jur 2d, Evidence § 1080.
    75 Am Jur 2d, Trial § 334.
    81 Am Jur 2d, Witnesses § 658.
    Credibility of witness giving uncontradicted testimony as matter for court or jury. 62 ALR2d 1191.

formed the contract and disputed many of the expenses sought to be recovered by the defendants. The defendants claimed that plaintiff had materially breached the contract requiring them to incur large repair and completion expenses. The jury found in favor of plaintiff and awarded him $26,448.99. However, the jury also found in favor of the defendants on their counter-complaint but "with no sum of money to be awarded". Defendants' motion for a new trial or judgment notwithstanding the verdict was thereafter denied and the trial court, Paul R. Mahinske, J., entered a judgment on the jury verdict. Defendants appeal from that judgment presenting four questions for review. *Held:*

1. The clear intent of the jury, as ascertained by the trial court's poll of the jury, was to render a verdict of "no cause for action" on defendants' counterclaim. Therefore, regardless of whether defendants' expenses were uncontroverted, the jury was not obligated to award damages. Moreover, defendants' expenses were not in fact uncontroverted. The jury, in its role as factfinder, could properly have found the defendants' expenses excessive.

2. The poll of the jurors revealed that their verdict was not inconsistent.

3. Neither party objected to the instructions given to the jury, thus, the Court of Appeals scope of review was to prevent manifest injustice. The instructions, when viewed in their entirety, adquately and fairly presented the parties' theories and the applicable law.

4. The verdict was not against the great weight of the evidence. The trial court did not abuse its discretion in denying defendants' request for a new trial.

Affirmed.

1. DAMAGES — JURY — INADEQUATE VERDICTS.

It is the duty of a jury finding in favor of a party to assess damages in accordance with the evidence; a verdict which ignores a prevailing party's uncontroverted out-of-pocket expenses is inadequate as a matter of law and must be reversed.

2. DAMAGES — JURY — INADEQUATE VERDICTS — NEW TRIALS — APPEAL.

Trial courts have a large measure of discretion in the matter of granting new trials on the ground that the jury's verdict is inadequate and appellate relief is available only in cases where the trial court has abused its discretion.

3. TRIAL — JUDGES — JURY VERDICT — UNCLEAR VERDICT.

A trial judge must poll the jury to ascertain the real verdict of the jury where the foreman's statement of the jury's decision is not clear.

4. APPEAL — TRIAL — CIVIL LAW — JURY INSTRUCTIONS — COURT RULES.

A party must make a request for a jury instruction before the instructions are given and must object to an alleged error after the jury has been instructed in order to preserve for appellate review the adequacy of jury instructions in a civil case; however, the Court of Appeals retains the power of *sua sponte* review of unobjected to instructions in order to prevent manifest injustice (GCR 1963, 516.2).

5. APPEAL — JURY INSTRUCTIONS — TRIAL.

The Court of Appeals will not find reversible error on the ground that a trial court failed to instruct the jury on basic and controlling issues where, upon reviewing the instructions in their entirety, the Court finds that the parties' theories and the applicable law were adequately and fairly presented.

6. CONTRACTS — JUDICIAL CONSTRUCTION — FACT QUESTIONS.

Construction of a contract is ordinarily a question of law for the court, however, where the language used is ambiguous or incomplete, or the circumstances are unusual, the substance of the parties' agreement is a question of fact for the jury.

7. CONTRACTS — SUBSTANTIAL PERFORMANCE.

A building contractor is required to furnish a building which substantially complies with the contract and may recover under a theory of substantial performance if only slight additions or alterations are required to finish the work according to the contract.

8. CONTRACTS — SUBSTANTIAL PERFORMANCE — FACT QUESTIONS.

The question of substantial performance of a contract is one ultimately for the jury.

9. JURY — EVIDENCE — CREDIBILITY OF WITNESSES.

It is within the province of the jury to determine the weight of the evidence and the credibility of the witnesses.

*T. Gilbert Parker,* and *James E. Sauter* (by *Lawrence J. Sauter),* of counsel, for plaintiff.

*Mitchell & Leon, P.C.* (by *Peter Fylonenko),* and *Gromek, Bendure & Thomas* (by *James G. Gross),* of counsel, for defendants on appeal.

Before: M. J. KELLY, P.J., and R. M. MAHER and R. L. TAHVONEN,\* JJ.

PER CURIAM. This appeal involves cross actions brought by the parties for breach of a construction contract. The jury found in favor of plaintiff and awarded him $26,448.99. However, the jury also found in favor of defendants on their counter-complaint but "with no sum of money to be awarded". Defendants' motion for a new trial or judgment notwithstanding the verdict was denied. Accordingly, they appeal as of right from the judgment entered on the jury verdict.

For purposes of our review, the tortious facts of this lingering dispute may be succinctly stated. Plaintiff, a licensed builder, agreed in 1977 to construct a "roughed-in" house for Dr. Nadia Turkewycz, one of the defendants; Dr. Turkewycz intended to complete the construction in stages over a period of years as funds became available to her. The house was designed to encompass a palatial 6600 square feet over five levels, and was ultimately intended for use both as a residence and office from which Dr. Turkewycz would conduct her dental practice.

Building and escrow agreements were signed in October, 1977, by plaintiff, Dr. Turkewycz and her two children, Ann and Julian, codefendants and co-owners of the property on which the house was to be built. The contract price for the "roughed-in" house was $104,000, to be paid in five progress

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

payments. The contract provided that plaintiff would "do his best to complete the house as per plans" by January 1, 1978, leaving him 86 days to complete the construction.

Perhaps the parties underestimated the likely difficulties or failed to appreciate that the project demanded disciplined coordination between the builder, owners, subcontractors, suppliers, and building inspectors. In any case, the course of construction was hampered by bad weather, inaccessibility of the site to supply trucks, disputes over the slow progress of construction, and delayed and inadequate progress payments, the "extras", and allegations of shoddy, below-code, workmanship. The parties' relationship, fraught with vituperation and frustration on both sides, came to a head in the spring of 1979, when defendants discharged plaintiff and took responsibility for finding other contractors to repair and complete the rough structure.

Defendants allegedly incurred $45,444.73 in damages in completing the construction, and it was these expenses which were sought to be recovered in defendants' counter-complaint. The validity of many of these costs was disputed by plaintiff, who himself sought $26,448.99 in damages in his complaint.

A seven-day jury trial was held on plaintiff's complaint and defendants' counter-complaint. Plaintiff contended that he had substantially performed his obligations under the contract, whereas defendants asserted that plaintiff had materially breached the contract, requiring them to incur large repair and completion expenses.

Defendants present four questions for our review, which we will address *seriatim.*

I

Defendants first claim that the jury found in their favor on the substance of their counterclaim, but awarded no money damages. Defendants argue that a verdict which ignores their undisputed out-of-pocket expenses of $37,444.73 is inadequate as a matter of law.

The jury rendered the following verdict:

"In the case of *Zinchook versus Turkewycz*, the jury has found for the plaintiff, Walter Zinchook—do we give the whole thing? Okay—the plaintiff shall be awarded the sum of $26,448.99. And in the case of *Turkewycz versus Zinchook*, the jury has found for the counter-plaintiff, Dr. Turkewycz, with no sum of money to be awarded."

Upon being polled, five of the six jurors responded that their verdict on defendants' counterclaim was "no cause for action".

When a jury finds in favor of a party, it is its duty to assess damages in accordance with the evidence. *Zielinski v Harris*, 289 Mich 381; 286 NW 654 (1939). Thus, a verdict which ignores a prevailing party's uncontroverted out-of-pocket expenses is inadequate as a matter of law and must be reversed. *Jackson v Depco Equipment Co*, 115 Mich App 570; 321 NW2d 736 (1982). However, trial courts have a large measure of discretion in granting new trials in this area and appellate relief is available only in cases where the trial court has abused its discretion. *Moore v Spangler*, 401 Mich 360, 372; 258 NW2d 34 (1977).

Contrary to defendants' assertion, the clear intent of the jury, as ascertained by the trial court's inquiry, *Alston v Tye*, 67 Mich App 138; 240 NW2d 472 (1976), was to render a verdict of "no

cause for action" on the counterclaim. Five of the six jurors specifically stated they found "no cause for action" on defendants' suit. Thus, regardless of whether defendants' expenses were uncontroverted, the jury was not obliged to award damages. *Alston v Tye, supra.*

Moreover, defendants' expenses were *not* in fact uncontroverted. Plaintiff introduced rebuttal evidence attacking many of the items of costs incurred in completing the house. For instance, plaintiff argued that defendants' plumbing damages resulted from vandalism and were not chargeable to him. Money spent for electrical garage door openers, skylights, drywall and finish, a septic tank, tools and trim, may have taken the building beyond the "rough structure" contemplated by the contract. In light of these questionable expenses, the jury could easily have concluded that defendants' completion costs were unjustifiably enhanced by items not called for in the contract, and which plaintiff had never agreed to provide. In its role as factfinder, the jury could properly have found defendants' expenses excessive.

## II

Defendants next claim that the verdict is logically and legally inconsistent, since the jury found "in favor of" both plaintiff and defendants on the merits of their respective claims.

As noted in *Alston v Tye, supra,* p 143, where the jury's verdict is unclear, the trial court must inquire as to the real intent of the jury. Here, a poll of the jurors revealed that five out of six intended a no-cause verdict on defendants' counterclaim. *Rabior v Kelley,* 194 Mich 107, 117; 160 NW 392 (1916). Thus, the verdict was not inconsistent.

## III

Defendants next contend that the trial court erred in failing to instruct the jury on several basic and controlling issues involved in the case. Specifically, the jury should have been instructed that the structure had to be constructed in accordance with the applicable building code; that the contract required plaintiff to construct a rough structure which would pass a building inspection; that the contract did not require defendants to remove snow from the building's access routes; and that the building and escrow agreements did not require defendants to deposit funds with a third party.

In order to preserve for appellate review the adequacy of jury instructions in a civil case, a party must make a request for a jury instruction before the instructions are given and must object to the alleged error after the jury has been instructed. *Stein v Continental Casualty Co,* 110 Mich App 410, 424; 313 NW2d 299 (1981); accord, GCR 1963, 516.2. This Court retains the power of *sua sponte* review of unobjected to instructions in order to prevent manifest injustice. *Hunt v Deming,* 375 Mich 581; 134 NW2d 662 (1965).

No objection to the instructions given was made by counsel for either party. In fact, the instructions were in large measure a product of counsel's joint efforts. As the trial judge aptly noted, no Standard Jury Instructions exist for building construction cases, and the instructions given were culled from a variety of negligence, breach of warranty, and construction contract cases.

Our review of the alleged errors is thus limited by defendants' failure to object to the instructions finally given. However, reviewing the instructions

in their entirety, we find that the parties' theories and the applicable law were adequately and fairly presented. *Webb v Travelers Ins Co,* 98 Mich App 157; 296 NW2d 216 (1980).

Defendants' first contention that the jury was not instructed as to the applicable law and contract requirements regarding building codes and inspections is without merit. Not only did plaintiff himself concede that the contract required him to comply with local codes, but the jury was instructed that plaintiff was required to furnish a structure complying with the contract plans and specifications.

Defendants' contentions that the jury should have been instructed as to snow removal and the requirements of the building and escrow agreements are also insubstantial. The pertinent contract language is ambiguous as to the specific obligations assumed by the parties with respect to snow removal and escrow funds. Although contract construction is ordinarily a question of law for the court, *Craib v Committee on National Missions of the Presbytery of Detroit of the United Presbyterian Church, USA,* 62 Mich App 617; 233 NW2d 674 (1975), where the language used is ambiguous or incomplete, or the circumstances are unusual, the substance of the parties' agreement is a question of fact for the jury. *Anderson v Brown,* 21 Mich App 699; 176 NW2d 457 (1970).

Finally, defendants' claim that the jury was not instructed that plaintiff had the burden of proving substantial compliance with the contract in order to prevail is misplaced. The court properly informed the jury that a contractor is required to furnish a building which "substantially complies" with the contract, and may recover if "only slight additions or alterations are required to finish the

work according to the contract". See, *e.g., P & M Construction Co, Inc v Hammond Ventures, Inc,* 3 Mich App 306, 314-315; 142 NW2d 468 (1966). The jury was also informed of plaintiff's theory of substantial performance entitling him to recover, and that he had the burden of proving each element of his case. Although the instructions are not perfect, given the understandable complexity of the issues and the painstaking efforts required to present them clearly to the jury, when read as a whole, they do fairly state the controlling legal principles.

### IV

Finally, defendants claim that the verdict was against the great weight of the evidence, and that the trial court abused its discretion in denying defendants' motion for a new trial. GCR 1963, 527.1(5); *Drouillard v Metropolitan Life Ins Co,* 107 Mich App 608; 310 NW2d 15 (1981).

We cannot say that denial of the request for a new trial was an abuse of discretion. Evidence was presented that the structure was nearly 95% complete when plaintiff was discharged. Plaintiff testified that the major obstacle to completion was defendants' refusal to supply the necessary funds as required by the building and escrow agreements. Although defendants disputed the claim of substantial performance, the question was ultimately one for the jury. *P & M Construction, supra,* pp 314-315.

The trial court aptly remarked that many, if not most, of the items of the building's ultimate cost were hotly disputed. There was, nonetheless, sufficient evidence from which the jury could properly resolve these disputed costs in favor of plaintiff.

Determining the weight of the evidence and the credibility of the witnesses is within the province of the jury. *Whitson v Whiteley Poultry Co,* 11 Mich App 598; 162 NW2d 102 (1968).

Affirmed.