# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF TRANSPORTATION,

       Plaintiff-Appellee,

v

ADRIAN & BLISSFIELD RAILROAD
COMPANY, JACKSON & LANSING
RAILROAD COMPANY, and CHARLOTTE
SOUTHERN RAILROAD COMPANY,

       Defendants-Appellants.

UNPUBLISHED
September 3, 2015

No. 321176
Ingham Circuit Court
LC No. 13-001338-CZ

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

In this case involving the Michigan Railroad Code (MRC), MCL 462.101 *et seq.*, defendants appeal by right from the circuit court's grant of summary disposition to plaintiff and judgment based thereon. We reverse and remand for further proceedings.

Plaintiff Michigan Department of Transportation ("MDOT" or "the department") filed suit against defendant railroad companies ("the railroads") alleging that they failed to comply with the department's regulatory orders to repair several railroad crossings. The parties reached a settlement agreement and the case was dismissed without prejudice under its terms. As to twelve of the subject crossings, the railroads agreed that "[b]y October 15, 2013, [they] must complete all ordered work and identified work the scope of which is detailed in the attachments referenced above and correct all maintenance deficiencies to ensure the crossing complies with the Railroad Code . . . ." As to five other crossings, they agreed to fill potholes by October 15, 2013, and to complete all ordered work by August 31, 2014. When each maintenance deficiency was fixed, the railroads were required to execute and submit an "Affidavit of Completed Maintenance Work" form to MDOT, which was to re-inspect the crossings as they received the affidavits. The department was to notify the railroads of any problems and allow them an additional 30 days to fix those problems. For its part, the department agreed to dismiss its complaint without prejudice "and refrain from collecting contempt or statutory penalties unless there is a default in this Agreement." The agreement also provided the following penalties for a "substantial[] default" by defendants:

- Railroads will pay MDOT contempt penalties of $60,000;

- Railroads will waive any defense to the Action based on any applicable statute of limitations; provided, however, that the Railroads retain any and all defenses it has to any of MDOT's claims;

- MDOT may refile its Complaint to enforce the regulatory orders;

- MDOT may refile its Complaint for statutory penalties of up to $1,000 per day for each day of noncompliance for each crossing identified above; and

- MDOT may seek any other remedy allowed by law.

Asserting that the railroads failed to make the ordered repairs even after the expiration of the October deadline, MDOT filed the instant complaint which alleged a contractual breach of the settlement agreement and restated the original claims asserting violations of the department's regulatory orders. The department asked the trial court to: (a) assess the $60,000 contempt sanction provided for in the settlement agreement; (b) sanction defendants $7,500 for violation of the department's order of repair pursuant to MCL 462.153 as to each of four crossings (for a total of $30,000); and (c) order defendants to pay statutory penalties of $1,000 per day for each crossing that remained unrepaired pursuant to MCL 462.441(2).

The trial court concluded, as a matter of summary disposition, that the railroads substantially breached the agreement and that, having done so, were subject to all the penalties referenced in the agreement regardless of any legal defenses to MDOT's action to enforce its repair orders. The trial court also issued an injunction requiring that the railroads repair the crossings by August 1, 2014. Following a motion for reconsideration, the trial court issued a separate opinion clarifying that the $1,000 per day penalty would be calculated from the date of the repair orders. The railroads appealed.

We begin our review by considering the scope and effect of the settlement agreement. "An agreement to settle a pending lawsuit is a contract, governed by the legal rules applicable to the construction and interpretation of other contracts." *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 663; 770 NW2d 902 (2009). Interpretation of a contract is a question of law subject to de novo review on appeal. *Arcambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002). A party claiming a breach of contract must establish the existence of a contract, that the other party breached the contract, and that it suffered damages as a result. *Dunn v Bennett*, 303 Mich App 767, 774; 846 NW2d 75 (2013).

The goal of contract construction is to enforce the parties' intent. *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130; 743 NW2d 585 (2007).

> [I]t is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law. However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties. [*In re Egbert R*

*Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008) (citation footnotes omitted).]

The trial court erred in finding that each of the penalties sought by MDOT in this case were remedies for breach of the settlement agreement. By the terms of the settlement agreement, defendants accepted the obligation to repair the crossings as specified in that agreement and to pay $60,000 if they substantially failed to do so. However, the agreement did not provide that the railroads would be further penalized unless and until MDOT reinitiated its enforcement litigation and prevailed on the merits. Further, if and when such litigation was reinitiated, the agreement explicitly provided that the railroads would be permitted to raise any and all defenses to enforcement other than the statute of limitations.

With this understanding, we review the basis for each of the three types of sanctions imposed on the railroads by the trial court.

First, the court directed that the railroads pay MDOT a contempt sanction of $60,000. The railroads do not dispute that they agreed to pay this penalty if they "substantially defaulted" on any part of the settlement agreement. They argue, however, that the trial court erred in granting MDOT's motion for summary disposition under MCR 2.116(C)(10) because there is a question of fact whether they did substantially default on that agreement.[1] We agree.

It appears that the trial court failed to consider the meaning of "substantially default" and instead concluded that only absolute compliance would be consistent with the settlement agreement. However, substantial, not absolute, compliance was required by the terms of the settlement. Moreover, absolute compliance is not required under Michigan contract law. Notably, "Michigan follows the substantial performance rule," *P & M Constr Co v Hammond Ventures, Inc*, 3 Mich App 306, 315; 142 NW2d 468, 473 (1966), which, when dealing with construction contracts, generally involves a finding of fact:

---

[1] A motion brought pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

> In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (citations omitted).]

While it is difficult to state what the term "substantial performance" or "substantial compliance" as applied to building and construction contracts means, inasmuch as the term is a relative one and the extent of the nonperformance must be viewed in relation to the full performance promised, it may be stated generally that there is substantial performance of such a contract where all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed are performed with such an approximation to complete performance that the owner obtains substantially what is called for by the contract. Imperfections in the matters of detail which do not constitute a deviation from the general plan contemplated for the work, do not enter into the substance of the contract, and may be compensated in damages, do not prevent the performance from being regarded as substantial performance. * * *

In the last analysis, the question as to whether there has been substantial performance is one of fact for the trier of the fact, and it may be added that whether there is a substantial performance of a building contract is to be determined in reference to the entire contract and what is done or omitted under it, and not in reference to one specification. [*Id.* at 314-315 (citation and internal quotation marks omitted).]

In support of its motion for summary disposition, the department presented the affidavit of Steve Nowakowski, an MDOT railroad safety inspector employed by the department. Nowakowski averred that he had personally inspected the railroad crossings at Dennis Street, Beecher Street, Demille Road, State Street, Mack Avenue, Riga Highway, Siberhorn Highway, Maple Street, East Ferry Street, and Lansing Avenue, designated as crossings a, b, h, k, m, n, o, p, q, and j in the agreement. He detailed work at each of these sites that he found to be incomplete and attached to his affidavit photographs of each site. MDOT also submitted the affidavit of a second MDOT safety inspector, James Goff, who averred that he had inspected the crossings at North Washington Street, East Lovett Street, Mount Hope Avenue, Columbia Street, Aurelius Road, Kalamazoo Street, and Jolly Road, designated as crossings c, d, e, f, g, i, and *l* in the agreement. Goff stated that, while some of these crossings were eventually repaired, only two of the crossings were fully repaired by the October 15, 2013 deadline. Like his colleague, he provided a detailed account of the work that was not completed and attached photographs of a number of the crossings.

In response, the railroads submitted their completed work forms and affidavits from two individuals they retained to inspect the repairs. Gary J. Alfonsi, a railroad construction contractor, averred that he visited all 17 sites listed in the settlement agreement, found that each had been repaired and opined that there were no continuing problems at the crossings. The railroads also submitted an affidavit from Anthony Alee, a signals supervisor for defendant Adrian & Blissfield Railroad Company, who averred that all the alleged deficiencies in crossing signaling had been addressed in a manner that substantially complied with the department's orders.

MDOT argues that the railroads' affidavits were insufficient to show substantial compliance because not all of Alfonsi's inspections were completed by October 15, 2013—some were not completed until January 26, 2014. Moreover, the department argues that the affidavits

"do not overcome MDOT's photographic evidence showing that the crossings were not repaired on time."

We reject the department's argument that the affidavits submitted by the railroads were insufficient to create a question of fact, at least at this early stage of the proceedings when substantial discovery has not yet taken place.[2] *Miller v Irwin*, 190 Mich App 610, 614; 476 NW2d 632 (1991). Further, the ultimate determination as to the meaning and weight to be afforded the photographs taken by the inspectors is entrusted to the factfinder after hearing all the evidence. See *Pace v Edel-Harrelson*, ___ Mich App ___; ___ NW2d ___ (2015); slip op at 8 ("questions of witness credibility and the weight given to the evidence are reserved for the finder of fact.").

The court next imposed sanctions pursuant to MCL 462.153. It assessed $7,500 against the railroads for failure to comply with the department's regulatory order as to four crossings, for a total of $30,000. We conclude, however, that this statute is not applicable to the railroad's failure to comply with the subject enforcement orders. MCL 462.153(1) provides:

> The department, for the purposes mentioned in this act, may issue orders, may administer oaths, certify to official acts, issue subpoenas, and compel the attendance of witnesses and the production of books, papers, and other related documents. If a person refuses or willfully fails to comply with an order of the department or a subpoena, or upon the refusal of any witness to testify regarding any matter upon which he or she may be lawfully interrogated, or to produce any books or papers in his or her custody or control which he or she was required by the department to produce, the court, upon application of the department, may compel obedience by proceedings for contempt, in the same manner as a case of disobedience of the requirements of a subpoena issued from that court.

The phrase "refuses or willfully fails to comply with an order of the department" does not occur in a vacuum and must be read consistent with and in the context of the entire subsection. See *People v Couzens*, 480 Mich 240, 249, 747 NW2d 849 (2008). The full text of the subsection makes clear that the contempt power it authorizes may be used only to punish disobedience of department orders designed to further the department's ability to conduct its own administrative hearings such as failure to comply with a subpoena or to produce documents or witnesses. Accordingly, the trial court erred when it concluded that this provision could be used to impose sanctions for failure to comply with the repair order.[3]

---

[2] MDOT's motion for summary disposition was filed almost immediately after it filed its complaint.

[3] Additionally, MCL 462.153 is titled, "Powers of department as to production of documents and witnesses, generally; subpoenas; compensation of witnesses; depositions; records of proceedings," which supports a determination that the contempt power set out in § 153(1) must relate to this specified area of authority, not all authority possessed by plaintiff. See *Knight v*

Lastly, the trial court imposed sanctions under MCL 462.441(2), which provides:

> Unless a specific penalty is otherwise provided in this act, a railroad, road authority, or person that violates or fails to comply with any provision of this act, or fails to obey or comply with any lawful order issued or rule promulgated by the department, is subject to a civil fine of not more than $1,000.00 for each day of noncompliance following exhaustion of administrative and legal remedies.

Given our ruling that the penalties set out in MCL 462.153 do not apply, the phrase, "unless a specific penalty is otherwise provide in this act," does not appear to bar application of sanctions under MCL 462.441(2). However, we agree with the railroads that because the legal proceedings are ongoing, and because no prior administrative proceedings occurred, they are not *yet* subject to any fines pursuant to this subsection.

The term "exhaustion of administrative and legal remedies" is not specifically defined in the MRC. See MCL 462.3. In general, MCL 24.301, which, as part of the state Administrative Procedures Act, MCL 24.201 *et seq.*, governs the judicial review of agency adjudications generally, provides:

> When a person has exhausted all administrative remedies available within an agency, and is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review by the courts as provided by law. Exhaustion of administrative remedies does not require the filing of a motion or application for rehearing or reconsideration unless the agency rules require the filing before judicial review is sought. A preliminary, procedural or intermediate agency action or ruling is not immediately reviewable, except that the court may grant leave for review of such action if review of the agency's final decision or order would not provide an adequate remedy.

With respect to judicial proceedings, scant caselaw exists regarding the definition of "exhaustion of legal remedies." But, it would, at the least, entail a final decision by the trial court and either the exhaustion of avenues for appeal or the running of time to appeal. See generally MCR 7.203; MCR 7.204. Under the plain language of MCL 462.441(2), then, fines are payable if the railroads fail to comply with the orders after the close of administrative and judicial proceedings confirming the ability of MDOT to compel compliance.

We also find erroneous the trial court's decision that, if properly awardable, the daily fines provided for in MCL 462.441(2) relate back to the initial date or dates of noncompliance. Were we to find otherwise and read MCL 462.441(2) as authorizing fines starting on the first day of noncompliance, but allowing collection of those fines only after the close of all administrative and judicial proceedings, the phrase "following exhaustion of administrative and legal remedies" would be rendered unnecessary and surplusage, *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860

*Limbert,* 170 Mich App 410, 414; 427 NW2d 637 (1988) ("[A] statute must be interpreted within the limits of its title.").

NW2d 67 (2014), given that a party would not normally be compelled to pay fines prior to a determination of the requirement to do so, cf. MCL 324.30112 (providing for the imposition of a per diem fine under the National Resources and Environmental Protection Act without regard to whether the person engaged in the violation has first exhausted judicial or administrative remedies).

Reversed and remanded for further proceedings consistent with this opinion.[4]  We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

[4] The parties have also briefed their positions as to the merits of the enforcement action and the defenses thereto.  As the trial court did not address those issues, we do not address them other than to hold, as stated earlier, that no defenses have been waived other than expiration of the statute of limitations.